Ellington, Presiding Judge.
The Superior Court of Fulton County dismissed claims brought by Alfred Fuciarelli under the Georgia Taxpayer Protection Against False Claims Act (“the TPAFCA”), OCGA § 23-3-120 et seq., on the ground that Fuciarelli lacked the required written approval of the Attorney General of the State of Georgia prior to bringing the claims, citing OCGA § 23-3-122 (b) (1). Pursuant to a granted application for interlocutory appeal, Fuciarelli argues that the trial court erred in finding that his claims required the Attorney General’s approval. For the reasons that follow, we affirm the judgment in part and reverse in part.
“We review a trial court’s ruling on a motion to dismiss de novo, viewing all allegations in the complaint as true. Thus, we owe no deference to a trial court’s ruling on questions of law and review such issues de novo under the ‘plain legal error’ standard of review.” (Citations and punctuation omitted.) Laskar v. Bd. of Regents of the Univ. System of Ga., 320 Ga. App. 414 (740 SE2d 179) (2013). So viewed, the relevant facts are as follows.
Fuciarelli is employed by the Board of Regents of the University System of Georgia as a tenured faculty member at Valdosta State University (“VSU”). As he admits in his brief, he is a public employee. He served as an assistant vice president for research and as dean of the graduate school. In his roles as vice president and dean, Fuciarelli recommended that VSU implement an electronic research administration system to better manage its grants and research programs and their funding sources. Although VSU initially approved the system, it removed Fuciarelli as the system’s budget manager and it later declined to fund the system. Fuciarelli complained to the administration about VSU’s “noncompliance with laws, rules, and regulations,” he expressed concerns that VSU’s lack of research administration tools exposed VSU to liability, and he complained about his exclusion from certain internal audits. Ultimately, VSU terminated Fuciarelli’s contract as assistant vice president and dean, which ended his administrative duties. He remained a tenured faculty member, but his salary and benefits were reduced. Fuciarelli appealed VSU’s decision to terminate his administrative duties to the Board of Regents, but the Board affirmed VSU’s decision.
On July 11, 2013, after exhausting his administrative remedies, Fuciarelli filed a complaint asserting causes of action against these defendants: the Board of Regents, including its unit institution *578 VSU;[1] William McKinney, in his individual capacity and in his official capacity as president of VSU; and Karla Hull, in her individual capacity and in her official capacity as the former acting vice president for academic affairs at VSU. Against each defendant, Fuciarelli asserted a claim for “False Claims Whistleblower Retaliation” under the TPAFCA, citing OCGA § 23-3-122; and a claim for “Public Employee Whistleblower Retaliation,” citing OCGA § 45-1-4.[2]
The defendants moved to dismiss Fuciarelli’s TPAFCA claims, asserting, in pertinent part, that claims against McKinney and Hull in their official capacities and the Board of Regents are barred by sovereign immunity and that McKinney and Hull are not proper defendants to those claims in their individual capacities. After the parties had briefed these issues, the trial court issued an order directing the parties “to submit supplemental briefs on whether Fuciarelli must obtain written approval from the Attorney General [prior to bringing claims under the TPAFCA] as required by OCGA § 23-3-122 (b) (1).” Fuciarelli does not contend that he obtained the Attorney General’s approval before filing his claims, and the record contains no evidence that he sought or was given that approval prior to filing the instant lawsuit.
On December 9,2013, the trial court ruled, in pertinent part, that Fuciarelli’s claims pursuant to OCGA § 23-3-122 (1) are barred by his failure to obtain written approval from the Attorney General. The trial court denied the defendants’ motion to dismiss Fuciarelli’s remaining claims brought pursuant to OCGA § 45-1-4, which prohibits retaliation against a public employee who discloses noncompliance with state law. On appeal, Fuciarelli contends that the trial court erred in dismissing his TPAFCA claim on the basis that he lacked Attorney General approval, arguing that “a retaliation civil action *579 belongs exclusively to the party bringing the claim and does not require Attorney General approval.”
1. Pretermitting whether there is any merit to Fuciarelli’s argument with respect to the Board of Regents, VSU, and Hull and McKinney in their official capacities, the trial court nevertheless properly dismissed the OCGA § 23-3-122(1) retaliation claims against these governmental defendants. As the defendants argued below in their original brief supporting their motion to dismiss in the trial court, the General Assembly did not intend for the state or any of its political subdivisions to be subject to retaliation claims brought pursuant to the TPAFCA. Nothing in the TPAFCA expressly or impliedly waives the government’s immunity from suit. Consequently, we must affirm the trial court’s order with respect to these defendants under the “right for any reason” rule.[3]
“Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and, therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue.” (Citations omitted.) McCobb v. Clayton County, 309 Ga. App. 217, 217-218 (1) (a) (710 SE2d 207) (2011). Except as otherwise provided in the Georgia Constitution, “[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.” Ga. Const. 1983, Art. I, Sec. II, Par. IX (e). See Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593, 597-598 (2) (755 SE2d 184) (2014). “In this regard, implied waivers of governmental immunity should not be favored.” (Citation and punctuation omitted.) Colon v. Fulton County, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013). The state’s sovereign immunity extends to the Board of Regents. Wilson v. Bd. of Regents of the Univ. System of Ga., 262 Ga. 413, 414 (3) (419 SE2d 916) (1992). And “[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.” (Punctuation and *580 footnote omitted.) Cameron v. Lang, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001). “The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver[.]” (Citation omitted.) Bonner v. Peterson, 301 Ga. App. 443 (687 SE2d 676) (2009). Fuciarelli cannot meet that burden.
The TPAFCA does not expressly provide that it waives the state’s sovereign immunity. Moreover, it does not set forth circumstances demonstrating an implied waiver of sovereign immunity. The TPAFCA does not create a cause of action against the state nor does it provide that an aggrieved party may collect money damages from the state. See Colon v. Fulton County, 294 Ga. at 95-96 (l).[4] In fact, the thrust of the TPAFCA is to authorize the State of Georgia, through the Attorney General or a designee, to bring civil actions to recoup losses that the state or a local government has suffered as a result of false claims presented to the state or a local government by others. For example, OCGA § 23-3-121 (a) sets forth a scheme by which those who present false or fraudulent claims for public funds as defined by the TPAFCA “shall be liable to the State of Georgia for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false or fraudulent claim, plus three times the amount of damages which the state or local government sustains because of the act of such person.” (Emphasis supplied.) To the extent that a private person may also bring such a claim, the TPAFCA expressly provides that such a claim shall be in the government’s name and with the government’s approval.[5] Moreover, under certain circumstances, the government has the right to intervene in the litigation, including the right to settle or dismiss the suit without the private person’s consent. OCGA § 23-3-122 (c). Aprivate person’s qui tarn recovery in such a civil action is limited to a percentage of the proceeds paid to the government. OCGA § 23-3-122 (h). And the “state or local government shall not be *581 liable for expenses which a private person incurs in bringing a civil action under [the TPAFCA].” OCGA § 23-3-122 (k).
Considered within this context, we conclude that OCGA § 23-3-122 (1) (1) does not create a retaliation cause of action against the government such that sovereign immunity is waived. That Code section provides, in pertinent part:
Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of a civil action under this Code section or other efforts to stop one or more violations of [the TPAFCA].
OCGA § 23-3-122 (1) (1) (emphasis supplied). This Code section clarifies that, in addition to any qui tarn recovery, a whistleblower is also entitled to all the relief necessary to be made whole from the entity that retaliated against him or her. In the context of the TPAFCA, that entity is not the governmental entity, but, rather, the “person, firm, corporation, or other legal entity” responsible for submitting the false claim to “the state or local government.” See OCGA § 23-3-120 (1) (defining a claim); OCGA § 23-3-121 (defining those who may be liable for submitting a false claim).[6] Construing OCGA § 23-3-122 (1) (1) to allow a retaliation claim against the government would be contrary to the law enforcement purpose of the statute, which is to recoup public funds.[7] For these reasons, we hold that the General Assembly did not waive the state’s sovereign immunity when it enacted the TPAFCA. Consequently, the trial court did not err in dismissing Fuciarelli’s retaliation claim made pursuant to OCGA § 23-3-122 (1) (1) against the governmental defendants.
2. The trial court, however, erred in dismissing Fuciarelli’s OCGA § 23-3-122(1) retaliation claims against Hull and McKinney in *582 their individual capacities on the ground that Fuciarelli failed to obtain Attorney General approval prior to filing his suit alleging retaliation claims under the TPAFCA. Attorney General approval is not required for retaliation claims, which are personal to the plaintiff.
The TPAFCA provides: “Subject to the exclusions set forth in [OCGA § 23-3-122], a civil action under this article may also be brought by a private person upon written approval by the Attorney General.” OCGA § 23-3-122 (b) (1) (emphasis supplied). The use of the word “article” in this context was intended to embrace civil actions brought in the name of government; applying it to retaliation claims was not intended and would lead to absurd results.
In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute’s text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and “the old law, the evil, and the remedy.” OCGA § 1-3-1 (a).
(Punctuation and emphasis omitted.) Rite-Aid Corp. v. Davis, 280 Ga. App. 522, 524 (1) (634 SE2d 480) (2006).
In the context of OCGA § 23-3-122 (b) (1), the “civil action” referenced is an action brought “in the name of the State of Georgia or local government[.]” Id. This Code section provides that, with Attorney General approval, a private person “may also” bring such a claim. Thus, the subsection is itself an exception to the general rule that only governments may prosecute TPAFCA claims. The subsection is intended to apply the prerequisite of Attorney General approval to any action under the TPAFCA that a private person brings in the name of the government for the benefit of the government. Retaliation claims, however, are personal to the plaintiff and are meant to afford proper plaintiffs with all relief necessary to make them whole. Because Fuciarelli was not required to obtain the Attorney General’s *583 approval prior to filing his TPAFCA retaliation action, the trial court erred in dismissing Fuciarelli’s claims against Hull and McKinney in their individual capacities.

Judgment affirmed in part and reversed in part.

Barnes, P. J., and Phipps, P. J., concur. McFadden, J., concurs fully in Division 1 and concurs fully and specially in Division 2. Dillard, Ray and McMillian, JJ., concur fully in Division 1 and dissent in Division 2.

 VSU is not a separate or distinct legal entity from the Board of Regents and, therefore, cannot be sued. See McCafferty v. Medical College of Ga., 249 Ga. 62, 65 (1) (287 SE2d 171) (1982), and Bd. of Regents of the Univ. System of Ga. v. Doe, 278 Ga. App. 878, n. 1 (630 SE2d 85) (2006) (both holding that the power to sue and be sued is vested in the Board of Regents, not in individual member institutions).

 The gist of Fuciarelli’s complaint appears to be that VSU, in declining to implement Fuciarelli’s research management tools, had misused or was at risk of “misusing government funds in many of its sponsored [research] programs,” and that when Fuciarelli complained to the administration about those matters, the administration retaliated by demoting him. It is unclear from the complaint whether a false claim was submitted to the State of Georgia. However, it is clear that Fuciarelli is not pursuing a qui tarn action based upon a specific false claim. In a qui tarn action, a private individual participates in a prosecution or a civil action on behalf of or for the benefit of a government and may receive all or part of any penalty imposed against the offending party. See, e.g., Stalley v. Orlando Regional Healthcare System, 524 F3d 1229, 1233 (II) (11th Cir. Fla. 2008) (“ ‘Qui tarn’ is an abbreviation for qui tam pro domino rege quam pro seipso, which means ‘he who as much for the king as for himself.’ ”) (citation and punctuation omitted; emphasis in original).

 Georgia appellate courts may apply the “right for any reason” rule when reviewing de novo certain judgments. See City of Gainesville v. Dodd, 275 Ga. 834, 835 (573 SE2d 369) (2002) (“Under the ‘right for any reason’ rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied.”) (citation omitted). See also Craigo v. Azizi, 301 Ga. App. 181, 187 (3) (687 SE2d 198) (2009) (dismissal of complaint affirmed under right for any reason rule). A summary judgment “must he affirmed if it is right for any reason, whether stated or unstated in the trial court’s order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond.” Anderson v. Jones, 323 Ga. App. 311, 312, n. 2 (745 SE2d 787) (2013). Because the issue of sovereign immunity was presented in defendant’s motion to dismiss and because Fueiarelli had an opportunity to respond, the application of the “right for any reason” rule is appropriate. See Abellera v. Williamson, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001).

 By comparison, the Supreme Court of Georgia concluded that the General Assembly, in enacting OCGA § 45-1-4, which authorizes certain retaliation claims against public employees, waived sovereign immunity. The court reasoned:
[W]here, as here, the Legislature has specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and has further expressly stated that an aggrieved party is entitled to collect money damages from the government in connection with a successful claim under the statute, there can be no doubt that the Legislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute.
Colon v. Fulton County, 294 Ga. at 95-96 (1).

 OCGA § 23-3-122 (b) (1) provides, in relevant part:
Subject to the exclusions set forth in this Code section, a civil action under [the TPAFCA] may also be brought by a private person upon written approval by the Attorney General. A civil action shall he brought in the name of the State of Georgia or local government, as applicable. . . .

 See also OCGA § 23-3-124, pertaining to venue of TPAFCA civil actions. Defendants are described as those having submitted “a false or fraudulent claim to the state or local government.” (Emphasis supplied.)

 See, e.g., OCGA §§ 23-3-122 (b) (6) (“To effectuate the law enforcement purposes of [the TPAFCA] in combating fraud and false claims directed at the public’s funds, it is the public policy of this state that private persons be authorized to take actions to provide to the Attorney General or local government such information and evidence.”); 23-3-126 (b) (The TPAFCA “shall be broadly construed and applied to promote the public’s interest in combating fraud and false claims directed at the public’s funds.”).