In the Supreme Court of Georgia

Decided: April 26, 2016

S15G1885. McKINNEY et al. v. FUCIARELLI.

THOMPSON, Chief Justice.

We granted a writ of certiorari to the Court of Appeals in Fuciarelli v. McKinney, 333 Ga. App. 577 (773 SE2d 852) (2015), to determine whether it correctly held that the Georgia Taxpayer Protection Against False Claims Act, OCGA § 23-3-120 et seq., does not require the Attorney General to approve taxpayer retaliation claims brought under subsection (l) of the Act. Because the plain language of the statute requires the Attorney General to approve a taxpayer retaliation claim prior to filing suit, we reverse the judgment of the Court of Appeals.

Plaintiff Alfred Fuciarelli is a tenured faculty member at Valdosta State University ("VSU"). Fuciarelli was at one time also assistant vice president for research and a dean of the graduate school. After he complained, however, about VSU's "noncompliance with laws, rules and regulations," VSU terminated Fuciarelli's contract to serve as an assistant vice president and dean.

The termination brought Fuciarelli's administrative duties to an end and, although Fuciarelli remained as a member of the faculty, his salary and benefits were reduced. Fuciarelli appealed his termination to the Board of Regents which affirmed VSU's decision.

Thereafter, Fuciarelli filed suit against the Board of Regents, William McKinney, individually and in his official capacity as president of VSU, and Karla Hull, individually and in her official capacity as a former acting vice president of VSU, seeking damages under both the Public Employee Whistleblower Retaliation Act, OCGA § 45-1-4, and the Taxpayer Protection Against False Claims Act ("TPAFCA"), OCGA § 23-3-120 et seq. The trial court denied defendants' motion to dismiss the public employee whistleblower retaliation claim, but granted defendants' motion to dismiss the taxpayer retaliation claim on the ground that Fuciarelli failed to obtain the approval of the Attorney General before filing suit.[1]

After granting defendants' application for review, a majority of the Court of Appeals affirmed, in part, and reversed, in part, holding, first, that the trial

---

[1] The trial court did not reach defendants' argument that Fuciarelli was not entitled to sue under the TPAFCA. See OCGA § 23-3-122 (i). We also do not address that argument.

court properly dismissed the TPAFCA claim against the Board, as well as McKinney and Hull in their official capacities, because the TPAFCA does not waive the government's immunity from suit; and, second, that the trial court erred in dismissing the TPAFCA claim against Hull and McKinney, in their individual capacities, because Fuciarelli failed to obtain the Attorney General's approval prior to bringing this action. Our concern in granting certiorari lies with the second division of the Court of Appeals' decision, i.e., whether the Court of Appeals faithfully followed the plain text of the statute.

"When a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly." Opensided MRI of Atlanta, LLC v. Chandler, 287 Ga. 406, 407 (696 SE2d 640 (2010). The plain meaning of the words can be found in "'their ordinary, logical and common meanings,' unless a clear indication of some other meaning appears. Judicial Council of Ga. v. Brown & Gallo, 288 Ga. 294, 297 (702 SE2d 894) (2010)." Daniel Corp. v. Reed, 291 Ga. 596, 597 (732 SE2d 61) (2012).

OCGA § 23-3-120 et seq., also known as the TPAFCA, authorizes the State of Georgia to recover monies that the State or a local government lost as a result of false or fraudulent claims for public funds. The Act prescribes a civil

penalty of not less than $5,500 and not more than $11,000 for each false or

fraudulent claim in addition to triple the amount of damages sustained by the

State or local government.[2]  These monies are to be recouped in a civil action

brought by the State, through the Attorney General or a designee.  They can also

be recovered in a suit brought by a private person on behalf of the government

with government approval.  In this regard, OCGA § 23-3-122 (b) (1) provides:

> Subject to the exclusions set forth in this Code section, a civil action
> under this article may also be brought by a private person upon
> written approval by the Attorney General. A civil action shall be
> brought in the name of the State of Georgia or local government, as
> applicable. The civil action may be dismissed only if the Attorney
> General gives written consent to the dismissal stating the reasons
> for consenting to such dismissal and the court enters an order
> approving the dismissal.

By its plain terms then, subsection (b) (1) is applicable to any civil action

brought by a private person "under this article," i.e., Article 6 of Chapter 3 of

Title 23.  Because the subsection allowing for taxpayer retaliation claims,

OCGA § 23-3-122 (l),[3] lies within "this article" there can be only one

---

[2] OCGA § 23-3-121 (a).

[3] This subsection provides:
(1) Any employee, contractor, or agent shall be entitled to all relief necessary
to make that employee, contractor, or agent whole if that employee, contractor,
or agent is discharged, demoted, suspended, threatened, harassed, or in any

conclusion – the Attorney General's approval is required before a taxpayer retaliation claim is filed. After all, the words "this article" can only mean "this article," which includes OCGA § 23-3-122 (l).

The Court of Appeals concluded that the General Assembly must have used the words "this article" in OCGA § 23-3-122 (b) (1) by mistake. See generally <u>Humthlett v. Reeves</u>, 211 Ga. 210, 219 (85 SE2d 25) (1954) (where the intent of the legislature is manifest, a mistake in a statute will be deemed surplusage to give effect to the legislative intent). In this regard, the appellate court reasoned that the "civil action" referenced in that subsection can only mean a case brought in the name of the State or a local government; that a

---

other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of a civil action under this Code section or other efforts to stop one or more violations of this article.

(2) Relief under paragraph (1) of this subsection shall include reinstatement with the same seniority status that the employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees. An action under this subsection may be brought in the appropriate superior court of this state for the relief provided in this subsection.

(3) A civil action under this subsection shall not be brought more than three years after the date when the discrimination occurred.

taxpayer retaliation claim is personal to the plaintiff; and that, therefore, Attorney General approval cannot be required for a taxpayer retaliation claim. To rule differently, the Court of Appeals declared,"would lead to absurd results." Fuciarelli, supra at 582.

> What is the test of absurdity? The contradiction of reason, it may be said, and to make an immediate application to legislation, the contradiction of the reason which grows out of the subject matter of the legislation and the purpose of the legislators. But all legislation is not simple nor its consequences obvious or to be controlled, even if obvious. Whether there should be any legislation at all and its extent and form may be matters of dispute. Its consequences may be viewed with favor or with alarm; some regretted but accepted as inevitable -- accepted as the shadow side of the good. In such situation it is for the legislature to determine, and it is very certain that the judiciary should not refuse to execute that determination from its view of some consequence which (to use the thought and nearly the words of Chief Justice Marshall) may have been contemplated and appreciated when the act was passed, and considered as overbalanced by the particular advantages the act was calculated to produce. [Cit.] Therefore the sound rule expressed in Sturgis v. Crowninshield, 4 Wheat. 202: "It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempted from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But, if in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend

6

what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous that all mankind would, without hesitation, unite in rejecting the application."

Pirie v. Chicago Title & Trust Co., 182 U.S. 438, 451-452 (21 SCt 906, 45 LEd 1171) (1901). See also Ezekiel v. Dixon, 3 Ga. 146, 154 (1847).

The Court of Appeals' pronouncement notwithstanding, this case does not meet the absurdity test. On the contrary, although reasonable legislators may have written the TPAFCA differently, it is not "so monstrous that all mankind would, without hesitation, unite in rejecting the application." Id.

Fuciarelli asserts the legislature could not possibly intend to require Attorney General approval of a taxpayer retaliation claim because to do so puts the Attorney General in a position of conflict – approving or disapproving an action to be brought against the State. But this is a policy question best left to the legislature, not our courts. If the legislature wanted to exempt taxpayer retaliation claims from the Attorney General approval requirement, it could have done so. In fact, although the legislature set the statute of limitations for TPAFCA claims at six years, see OCGA § 23-3-123, it expressly carved out a three-year limitation period for taxpayer retaliation claims brought under OCGA

7

§ 23-3-122 (l) (3).  Thus, the full text of the TPAFCA demonstrates that the legislature knew how to exempt taxpayer retaliation claims from the broader requirements of the Act and did so when it was so inclined.[4]

Fuciarelli also argues that in enacting OCGA § 23-3-122 (l), the legislature looked to its federal counterpart, 31 USCA § 3730 (h),  for direction; that, except for the provision requiring Attorney General approval, the statutes are extremely similar; and that, therefore, the legislature could not have meant to saddle a taxpayer retaliation claim with an Attorney General approval requirement.   We find this argument to be misguided.   Rather than demonstrating an intent on the part of the legislature to follow the federal statute and omit language requiring Attorney General approval, it is apparent that the legislature simply used the federal law as a template and purposefully added the Attorney General approval requirement.

Finally, Fuciarelli posits that, when coupled with the plain language of the TPAFCA, the broad construction provision of the Act, OCGA § 23-3-126 (b), supports the conclusion that the legislature used the phrase "civil actions under

---

[4]  We note, too, that Georgia law affords public employee whistleblowers like Fuciarelli an alternative remedy, OCGA § 45-1-4, which does not require Attorney General approval and which, as noted above, Fuciarelli is pursuing in the trial court.

this article," to require Attorney General approval for actions brought to vindicate government interests, but not the interests of a whistleblower. However, as we previously observed, the words "this article" are clear and unambiguous. "Absent clear evidence that a contrary meaning was intended by the legislature," Judicial Council of Ga. v. Brown & Gallo, supra, they can only be read to mean "this article" – and that includes taxpayer retaliation actions brought under OCGA § 23-3-122 (l).

Our ruling is not complicated. It simply requires deference to the legislative prerogative of the General Assembly and adherence to the plain language of the TPAFCA. The Court of Appeals erred in doing otherwise.

Judgment reversed. All the Justices concur.