**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**June 19, 2020**

# In the Court of Appeals of Georgia

A20A0162. CAMPBELL et al. v. CIRRUS EDUCATION, INC., et al.

A20A0163. CAMPBELL et al. v. CIRRUS EDUCATION, INC., et al.

MILLER, Presiding Judge.

This appeal involves a dispute between two teachers, Susan Campbell and Ginger Snow, and their former charter school employer, Cirrus Education, Inc.[1] and its superintendent and chief executive officer, Ashanti Johnson. Campbell and Snow appeal from the trial court's order granting Cirrus Education's and Johnson's (collectively "Cirrus") motion to dismiss. The appellants argue that the trial court erred by granting Cirrus' motion to dismiss because (1) the trial court did not conduct

---

[1] We note that Cirrus Education, Inc. states that its correct name is Cirrus Education Group, Inc.

the proper inquiry and assumed facts outside of the complaint in ruling on the motion to dismiss; and (2) Cirrus was not a public entity, and that even if it were a public entity, their claims against Cirrus were not barred by the Taxpayer Protection Against False Claims Act ("TPAFCA"). We conclude that Cirrus was a public employer and that the appellants were public employees, and that thus the appellants' claims were barred under the TPAFCA. Accordingly, we affirm.

> At the outset, we note that on appeal, this Court conducts a de novo review of a trial court's ruling on a motion to dismiss. In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts; however we need not adopt a party's legal conclusions based on these facts.

(Citations and punctuation omitted.) *Dove v. Ty Cobb Healthcare Systems, Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012).

So viewed, the record shows that from 2016 to 2017, Campbell and Snow were teachers at the Cirrus Academy,[2] a state charter school which has a state-wide

---

[2] Cirrus Education Group, a nonprofit corporation, entered into a charter agreement with the State Charter Schools Commission for the purpose of creating and operating a state charter school, Cirrus Academy. See OCGA § 20-2-2065 (b) (4) (stating that charter schools shall be "[o]rganized and operated as a nonprofit

attendance zone and operates as a public school under a charter that was approved by the State Charter School Commission ("the Commission"). According to the allegations in the complaint, Campbell was hired to teach first grade students, while Snow was hired to teach special education. According to the appellants, Johnson told them that Cirrus had received $300,000 for special education services and materials. When Campbell requested certain supplies from Johnson on behalf of Snow and another teacher, however, Johnson told her that "it wasn't in the budget." Snow said that she "observed" that a certain teacher at Cirrus did not have the requisite teaching certificates and that when she voiced her concerns to Cirrus' principal, the principal told her to "mind her allegiance."

The appellants alleged that in October 2016, they noticed that the full-time equivalent (FTE) count[3] did not match the actual number of special education students who were enrolled at Cirrus and that several individual education programs ("IEP")[4] were either expired or were about to expire. Snow expressed her concerns

_____

corporation under the laws of this state. . . ."

[3] The full-time equivalent count represents a day's worth of classes for one special education student.

[4] Individual education programs are plans that set out the academic and curriculum goals and the support services needed for special needs students.

3

about the FTE discrepancies to Johnson and other Cirrus administrators, and she and Campbell were later sent threatening text messages. Campbell alleged that she also received a text message from an unknown number threatening her that there would be "consequences" if she attended any board meetings or told anyone else about the alleged discrepancies in Cirrus' records. The appellants told Johnson and Cirrus' principal that the special education laws were being broken, and Johnson allegedly told Campbell, "do not contact the State."

Plaintiff Campbell subsequently contacted the Georgia Department of Education ("DOE") and expressed her concerns that Cirrus was mishandling government funds appropriated for the school and that special education students were not receiving their requisite services, and she also told the DOE of other issues involving Cirrus. According to Campbell, after speaking with the DOE, Johnson and Cirrus' principal "screamed" at Campbell for contacting the DOE. The appellants alleged that they were subjected to repeated instances of harassment and verbal abuse after contacting the DOE and were also denied retirement benefits. The appellants were later terminated from their employment at Cirrus after the DOE disclosed the results of its investigation into Cirrus and found that it had violated federal and state laws.

The Appellants subsequently filed suit against Cirrus under seal[5] pursuant to the TPAFCA. Cirrus answered and simultaneously filed a motion to dismiss. Following a hearing, the trial court granted Cirrus' motion to dismiss. In granting the motion, the trial court found that the appellants were restricted from bringing their action under the TPAFCA because (1) Cirrus was a public employer and that the appellants were public employees; (2) the appellants had an obligation to report allegations of wrongdoing within the scope of their employment; and (3) the appellants had access to the information or records which formed the basis of the allegations. This appeal followed.

*Case No. A20A0162*

1. First, the appellants argue that the trial court erred in granting the motion to dismiss because the trial court did not allow the parties to conduct discovery and the trial court considered evidence outside of the complaint in ruling on the motion to dismiss. This enumeration of error lacks merit.

(a) As to the appellants' contention regarding the trial court's failure to allow the parties to conduct discovery,

---

[5] OCGA § 23-3-122 (b) (2) states in relevant part that "[t]he complaint shall be filed in camera and under seal, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."

5

[i]f a party files a motion to dismiss before or at the time of filing an answer and pursuant to the provisions of this Code section, discovery shall be stayed for 90 days after the filing of such motion or until the ruling of the court on such motion, whichever is sooner. The court shall decide the motion to dismiss within the 90 days provided in this paragraph.

OCGA § 9-11-12 (j) (1).

Here, the record shows that after the appellants filed the initial complaint, Cirrus filed an answer and simultaneously filed a motion to dismiss on September 14, 2018. The appellants filed an amended complaint on October 10, 2018, and Cirrus filed an answer to the amended complaint and another motion to dismiss. More importantly, Cirrus filed a motion to extend the stay of discovery until a ruling on the motion to dismiss, to which the appellants did not object. Accordingly, we reject the appellants' argument that the trial court erred by granting the motion to dismiss when discovery had not yet commenced. See *Paul and Suzie Schutt Irrevocable Family Trust v. NAC Holding, Inc.*, 283 Ga. App. 834, 837 (2) (642 SE2d 872) (2007) (holding that the trial court did not abuse its discretion in ruling on the motion to dismiss without affording the appellant the opportunity to conduct discovery where the appellant stipulated to a stay of discovery).

6

(b) The appellants' further argue that the trial court assumed facts outside of the complaint when ruling on the motion to dismiss. Specifically, the appellants contend that the trial court improperly ruled that the appellants had an obligation to investigate within the scope of their employment because this fact was not asserted in the complaint or the answer. This argument lacks merit.

It is true that

[a]lthough a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when it does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9-11-56. In accordance with this procedure, the trial court has the burden of informing a plaintiff that it will be considering exhibits attached to the defendant's motion to dismiss and that the plaintiff would have no less than 30 days within which to submit his or her own evidence in response to the motion for summary judgment.

(Citations and punctuation omitted; footnotes omitted.) *Islam v. Wells Fargo Bank, N. A.*, 327 Ga. App. 197, 200-201 (1) (757 SE2d 663) (2014).

Here, however, the appellants have not shown that the trial court considered matters outside of the complaint and the answer when ruling on the motion to dismiss. The trial court's ruling that the appellants had an obligation to investigate within the

7

scope of their employment was based on its finding that Cirrus was a public employer as a matter of law, and therefore, as teachers for a public employer, the appellants had a duty to investigate in accordance with Georgia regulations. Therefore, the appellants' argument that the trial court improperly considered matters in ruling on the motion to dismiss is meritless.

2. Next, the appellants argue that the trial court erred by ruling that their claims were barred by the TPAFCA because Cirrus was not a public entity, and even if Cirrus was a public entity, the TPAFCA did not bar their claims against Cirrus. We disagree.

Our analysis of the proper interpretation of the TPAFCA is guided by the following principles:

> A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it,

where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

(Citations and punctuation omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017).

(a) As to the appellants' argument that Cirrus was not a public entity, we note that

OCGA § 23-3-120 et seq., also known as the TPAFCA, authorizes the State of Georgia to recover monies that the State or a local government lost as a result of false or fraudulent claims for public funds. The Act prescribes a civil penalty of not less than $5,500 and not more than $11,000 for each false or fraudulent claim in addition to triple the amount of damages sustained by the State or local government.[6] These monies are to be recouped in a civil action brought by the State, through the Attorney General or a designee. They can also be recovered in a suit brought by a private person on behalf of the government with government approval.

*McKinney v. Fuciarelli*, 298 Ga. 873, 874-875 (785 SE2d 861) (2016). OCGA § 23-3-122 (i), however, does not permit an action to be brought by a person who is or was a public employee or public official. For purposes of an action brought under the

_____

[6] OCGA § 23-3-121 (a).

TPAFCA, the terms "public employee," "public official," and "public employment" include state and local employees and officials. OCGA § 23-3-122 (i). The Act defines "State" as "the State of Georgia and any state department, board, bureau, division, commission, committee, public benefit corporation, public authority, council, office, or other governmental entity performing a governmental or proprietary function for this state." OCGA § 23-3-120 (6). The Act also defines "local government" as

> any Georgia county, municipal corporation, consolidated government, authority, board of education or other local public board, body, or commission, town, school district, board of cooperative educational services, local public benefit corporation, hospital authority, taxing authority, or other political subdivision of the state or of such local government, including the Metropolitan Atlanta Rapid Transit Authority.

OCGA § 23-3-120 (3). Therefore, the pertinent question here is whether Cirrus is a public entity such that the appellants were public employees at Cirrus for purposes of OCGA § 23-3-122 (i).

"Charter schools and charter systems are governed by the Charter Schools Act of 1998." *Day v. Floyd County Bd. of Educ.*, 333 Ga. App. 144, 147 (1) (775 SE2d 622) (2015). See also OCGA § 20-2-2060 et seq. "The Charter Schools Act was

10

enacted by the General Assembly with the intent to increase student achievement through academic and organizational innovation by encouraging local school systems to utilize the flexibility of a performance based contract called a charter." (Citation and punctuation omitted.) *Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc.*, 293 Ga. 629, 630 (748 SE2d 884) (2013). The Act authorizes the Commission to approve petitions for state charter schools that have state-wide attendance zones, such as Cirrus. OCGA §§ 20-2-2082 (d), 20-2-2084 (b) (1). The Act requires that a state charter school petitioner submit its petition to the commission and to the local board of education where the charter school will be located. OCGA § 20-2-2084 (c) (1).

Additionally, state charter schools are public schools only. See OCGA § 20-2-2081 (5) ("A state charter school shall be a public school."). Thus, state charter schools "serve as a complement to the educational opportunities provided by local boards of education in the state's system of public education[.]" OCGA § 20-2-2080 (a) (1). "Funding for state charter schools . . . [is] subject to appropriations by the General Assembly and such schools [are] treated consistently with all other public schools in this state[.]" OCGA § 20-2-2089 (e). Furthermore, the Act establishes that state charter schools are regulated by the Commission, and vests the Commission

11

with the authority to approve and deny state charter school petitions, and to terminate state charter school contracts. OCGA § 20-2-2083 (a) (1) - (c) (2).

We conclude that Cirrus, a state charter school, is a public entity such that the appellants were public employees under OCGA § 23-3-122 (i). As stated above, the General Assembly has specifically recognized that state charter schools are solely public schools that serve as a complement to local boards of education, and that state charter schools are treated in the same manner as other public schools in Georgia with regard to funding. OCGA §§ 20-2-2080, 20-2-2083. The General Assembly also authorized the Commission to establish and regulate state charter schools, and also provides for their funding. OCGA §§ 20-2-2083, 20-2-2093 (e). Therefore, the trial court did not err by ruling that Cirrus is a public entity.

The appellants assert a number of arguments to support their position that Cirrus is not a public entity, but none of their arguments have merit. First, the appellants argue extensively that the trial court erred in determining that Cirrus is a public entity because Cirrus is not entitled to sovereign immunity. The trial court, however, did not rule that the appellants' action under the TPAFCA was barred by

12

sovereign immunity. Accordingly, the appellants' sovereign immunity claim in this case is misplaced.[7]

Second, the appellants argue that the trial court erred in ruling that Cirrus is a public entity by failing to analyze whether Cirrus was a public entity under the federal courts' "pervasive entwinement test." The TPAFCA, however, already defines the terms "public employee," "public official," "public employment," and "local government." See OCGA §§ 23-3-120 (3), 23-3-122 (i). Moreover, the appellants do not identify any portion of the statute that evinces an intent by the General Assembly for courts to be guided by federal law in determining whether an organization is a public entity, especially when the statute already provides several related definitions. See *McKinney*, supra, 298 Ga. at 877 (rejecting the plaintiff's argument that the General Assembly intended for courts to look to federal law for guidance in determining whether a taxpayer could bring an action under the TPAFCA without the Attorney General's approval where there was no evidence that the legislature intended for courts to follow the federal counterpart). Therefore, the appellants'

---

[7] We note that the appellants asserted several tort claims against Cirrus in another case on appeal, A20A0191, in which sovereign immunity is at issue. We will therefore address these arguments separately in that case.

13

argument that the trial court erred by failing to analyze whether Cirrus is a public employer under the federal pervasive entwinement test fails.

Next, the appellants argue that, although Cirrus is a public school under the Act, its status as a public school does not render it a public employer under OCGA § 20-2-2065 (b) (4). This claim, however, is meritless.

OCGA § 20-2-2065 provides the criteria which a local or state board should use in determining whether to approve or renew a charter petition. The particular criterion upon which the appellants base their argument is found in OCGA § 20-2-2065 (b) (4), which states that a charter school or a charter system[8] shall be "[o]rganized and operated as a nonprofit corporation under the laws of this state; provided, however, that this paragraph shall not apply to any charter petitioner that is a local school, local school system, or state or local public entity[.]" Thus, based on OCGA § 20-2-2065 (b) (4), the appellants contend that charter schools like Cirrus are distinguishable from traditional public schools and state or local entities.

This particular criterion, however, does not support the appellants' argument. As previously stated, state charter schools are required to be public schools. OCGA

---

[8] A charter system is "a local school system that is operating under the terms of a charter[.]" OCGA § 20-2-2062 (3.1).

14

§ 20-2-2081 (5). The Act, however, allows for existing local schools and school districts to convert to charter schools or charter systems. OCGA § 20-2-2063.2. Thus, OCGA § 20-2-2065 (b) (4) merely stands for the proposition that existing local public schools and school districts do not have to organize and operate as nonprofit organizations. Accordingly, the appellants' claim that OCGA § 20-2-2065 (b) (4) renders Cirrus a private entity fails.

Lastly, we also reject the appellants' claim that OCGA § 20-2-2065 (a) reflects that a non-profit corporation's state charter school must be treated in a different manner from other public schools. OCGA § 20-2-2065 (a) provides a broad waiver that charter schools or charter systems

> shall not be subject to the provisions of this title or any state or local rule, regulation, policy, or procedure relating to schools within an applicable school system regardless of whether such rule, regulation, policy, or procedure is established by the local board, the state board, or the Department of Education; provided, however, that the state board may establish rules, regulations, policies, or procedures consistent with this article relating to charter schools . . . In exchange for such a waiver, the charter school agrees to meet or exceed the performance based goals included in the charter and approved by the local board or, for the charter system, the system agrees to meet or exceed the system-wide performance based goals included in the charter and approved by the state board, including but not limited to raising student achievement.

The appellants fail to show, however, that this broad waiver has any bearing upon Cirrus' status as a public school for purposes of the TPAFCA. Furthermore, as Cirrus correctly notes, such a waiver is available to all public schools in this state. See OCGA § 20-2-80 (a) ("A local school system may request increased flexibility from certain state laws, rules, and regulations in exchange for increased accountability and defined consequences through a contract with the State Board of Education. Such contract shall establish a framework of accountability, flexibility, and consequences in accordance with this article."). Therefore, for all of the reasons stated above, the trial court did not err by ruling that Cirrus is a public entity and that the appellants were therefore public employees under OCGA § 23-3-122 (i).

(b) As to the appellants' argument that their claims are not barred by the TPAFCA even if Cirrus is a public entity, this argument also fails.

The TPAFCA does not permit an action to be brought by a person who is or was a public employee or public official if the allegations are substantially based upon "(1) [a]llegations or wrongdoing or misconduct which such person had a duty or obligation to report or investigate within the scope of his or her public employment or office; or (2) [i]nformation or records to which such person had access as a result of his or her public employment or office." OCGA § 23-3-122 (i) (1) - (2).

16

Here, in their amended complaint, the appellants alleged that they were both employed as teachers at Cirrus. The appellants alleged that during their employment, they noticed that the FTE count did not match the actual number of special education students who were enrolled at Cirrus, and that several IEP programs were either expired or were about to expire. Campbell also noticed that special education students were not receiving their required services.

We conclude that the appellants' claims are barred under the TPAFCA. As acknowledged in their complaint, while employed at Cirrus, the appellants had access to information which led them to believe that Cirrus was violating state and federal laws with respect to the FTE count and the IEP programs and that special education students were not receiving necessary services. Consequently, the appellants' allegations were based upon information or records that they had access to as a result of their employment, and therefore the trial court did not err in determining that their claims were barred under OCGA § 23-3-122 (i) (2).

*Case No. A20A0163*

3. In a duplicate case before this Court, the appellants argue that the trial court did not conduct the proper inquiry and assumed facts outside of the complaint in ruling on Cirrus' motion to dismiss. The appellants also argue that the trial court erred

17

by granting the motion to dismiss because Cirrus is not a public entity, and even if it is a public entity, their clams were not barred by the TPAFCA. For the reasons stated above in Divisions 1 and 2, we affirm the trial court's order granting Cirrus' motion to dismiss.

*Judgment affirmed. Mercier and Brown, JJ., concur.*