**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 29, 2016**

# In the Court of Appeals of Georgia

A16A0158. KEMP v. KEMP et al.

DILLARD, Judge.

Sandra Kemp ("Sandra") appeals the trial court's interim award of attorney fees to her son, Charles Alexander Kemp, II, and his minor children (collectively, "Alexander") in their action against her for breach of trust and other related claims.[1] On appeal, Sandra argues that the trial court erred in awarding attorney fees to Alexander under OCGA § 53-12-302 (a) (4) prior to the conclusion of the case because (1) such an award is not authorized by the statute, and (2) it is impossible to know at this time whether and to what extent Alexander will prevail on his claims. As to the amount of the award, Sandra maintains that the trial court erred in awarding

---

[1] Although this litigation is still pending, the trial court entered its interim-fee award as a final appealable order under OCGA § 9-11-54 (b).

fees for claims other than breach of trust, including claims that Alexander later abandoned. Because we agree that an award of attorney fees and costs of litigation to Alexander prior to the adjudication of his breach-of-trust claim is not authorized by OCGA § 53-12-302 (a) (4), we vacate the fee award and remand the case for further proceedings consistent with this opinion.

Relevant to this appeal, the record shows[2] that Charles Alexander Kemp ("Alex"), who was Sandra's late husband and Alexander's father, was a successful

---

[2] The factual background underlying this appeal is gleaned from the trial court's October 14, 2014 order, granting Alexander's request for preliminary injunctive relief, which, *inter alia*, temporarily removed Sandra as trustee of certain family trusts. In its order, the trial court appears to have relied upon testimony and other evidence presented at an evidentiary hearing, but the transcript of that hearing is not included in the appellate record because, in her notice of appeal, Sandra only requested that transcripts of two subsequent hearings be transmitted to this Court. It is not, then, possible for this Court to determine whether the trial court's factual findings in the October 14, 2014 order were supported by the evidence. However, because this appeal involves a purely legal question of statutory interpretation, we rely on the trial court's factual findings solely to provide context for the instant dispute between the parties. But to the extent that the omitted transcript is necessary to the resolution of this appeal, we presume that the findings of the trial court are correct. *See Cox v. Bank of Am., N.A.*, 321 Ga. App. 806, 807 (2) (742 SE2d 147) (2013) ("[W]e will not presume the trial court committed error where that fact does not affirmatively appear in the record." (punctuation and citation omitted)); *see also Curry v. Miller*, 328 Ga. App. 564, 565 (763 SE2d 489) (2014) ("Georgia's appellate courts have made clear that [when] the record is incomplete as the result of an appellant's failure to comply with the requirements of OCGA § 5-6-37, the order of the trial court will be affirmed.").

businessman who founded companies that provide dialysis-management services. In February 2004, Alex executed his last will and testament, in which Sandra was named the sole executrix and trustee of a marital trust and a residual trust, both of which were created by the will. Alexander, who was 19 years old at the time, was named the first successor trustee of both trusts. Also in February 2004, Alex created the Green Tree Trust, which was the sole owner of his business that managed contracts for the operation of Wake Forest University's dialysis clinics.

Alex died on May 24, 2004, and under his will, he left substantially all of his estate to the marital trust. The remainder of the estate was left to the residual trust. Both the marital and residual trusts (like the Green Tree Trust) provided that all income derived from those trusts be paid to Sandra during her lifetime, and if such income was not sufficient, the trustee of the marital trust could draw from the principal as necessary. The will further provided that, after Sandra's death, the marital and residual trusts would be combined, with Alexander as the sole trustee and beneficiary of the income and principal. Thereafter, all trust property would eventually pass outright, free of trust, to Alexander incrementally over his lifetime.

Shortly after Alex's death, his life insurance policy paid $4,781,235.07 to Sandra, as trustee of the so-called 1990 Life Insurance Trust that Alex had created

3

prior to his death. Under this trust, Sandra was entitled to income, but no principal absent a showing of a need for the funds. Following her death, Alexander would be the sole beneficiary of all trust property. But notwithstanding the terms of the 1990 Life Insurance Trust, Sandra distributed all of the life insurance proceeds to herself, individually. And later, when the insurance company paid $80,000 from a lawsuit settlement to Sandra, as trustee of the 1990 Life Insurance Trust, she again deposited the funds to an account in her individual name.

On October 12, 2005, Sandra's attorneys created the SS Kemp Trust to replace the Green Tree Trust. Despite being named as a trustee of the SS Kemp Trust, Alexander had no knowledge that the trust was created, never signed the trust agreement, and only discovered the trust's existence after initiating this litigation. The SS Kemp Trust was different from the Green Tree Trust in several material respects, including that Sandra reserved the right to unilaterally designate all of the trust property to pass to her future spouse or siblings, among others. In 2007, Sandra entered a new management contract for the operation of Wake Forest University's dialysis clinics, referenced *supra*, but she did so via a company owned by the SS Kemp Trust, instead of the one owned by the Green Tree Trust, which had been created by her late husband. The business model was identical to that created by Alex

4

in 2004, except for the different terms set forth in the SS Kemp Trust. Subsequently, Sandra, as managing member of a new dialysis-management company owned by the SS Kemp Trust, contracted with Emory University to manage its dialysis clinics. While the marital trust and Alexander had an interest and a reasonable expectancy in the profits from this new business opportunity, the profits derived from this business were distributed solely to Sandra, outside of trust.

On October 11, 2013, Sandra created yet another irrevocable trust, the SSK Kemp Trust, to replace the SS Kemp Trust and to own 99 percent of the dialysis-management business. Under this trust's terms, Sandra was the trustee and several other individuals were her co-successors, but Alexander was neither a trustee nor a successor trustee. Indeed, prior to filing this lawsuit, Alexander had never even seen the SSK Kemp Trust. Sandra was the lifetime beneficiary of the trust, and after her death, all trust property was to be distributed to her grandchildren. Thus, the SSK Kemp Trust, unlike the Green Tree Trust from which it originated, excluded Alexander as a beneficiary.

On June 9, 2014, Alexander, individually and on behalf of his minor children, filed a complaint against Sandra, personally and as trustee of the above-referenced trusts, as well as various businesses that were owned by those trusts. The complaint

5

asserted, *inter alia*, claims for "breach of trust, misappropriation of corporate opportunity, self-dealing, conspiracy to commit breach of trust, and aiding and abetting in breach of trust." In relevant part, Alexander contended that, as trustee of the marital trust, Sandra had "pursued and misappropriated opportunities belonging to the [m]arital [t]rust" and "entered into various businesses that compete directly with the [m]arital [t]rust." In addition, Alexander sought preliminary and permanent injunctive relief, requesting that Sandra be immediately removed as trustee of the marital trust and Alexander be appointed as successor trustee.

Shortly after the complaint was filed, the trial court issued a temporary restraining order, providing that all defendants in the case were

> restrained and enjoined from diverting, transferring, selling, secreting, encumbering, trading, pledging as collateral, contracting to sell, concealing, or otherwise disposing of or removing from the jurisdiction of [the court] any of the assets, property, contracts, equipment, accounts, corporate opportunities, or the like of any of the [d]efendant entities, [d]efendants, the [m]arital [t]rust, and [a "new trust" referenced in a letter by Sandra's attorney]—except as is customary and in the ordinary course of business and is necessary to maintain ongoing operations.

In addition, the trial court prohibited the parties from "destroying or secreting" certain records relevant to the litigation and granted Alexander access to various records and

documents in the defendants' custody and control. The order also provided that all documents exchanged in discovery must remain confidential and that the complaint and any further pleadings would remain sealed as long as the temporary restraining order was in effect.

Subsequently, after the defendants filed their answers to the complaint, the trial court issued a consent order, extending the temporary restraining order until September 11, 2014, and ordering Sandra to take several actions with respect to the trusts at issue. But notwithstanding the restraining order, Sandra, intentionally and in violation of the order, transferred approximately $4,800,000 in assets held in her individual name to a new trust that was intended to replicate the 1990 Life Insurance Trust. Additionally, she purchased a new home with personal funds.

On September 3, 2014, Alexander filed an application for a contempt order against Sandra for alleged violations of the temporary restraining order. Specifically, Alexander requested an order holding Sandra in civil contempt of court, ordering her to pay a $1,000 fine for each "disobedient act," ordering her to comply with the trial court's orders at all times, and awarding Alexander reasonable attorney fees for filing the application. According to Alexander, Sandra had breached at least two provisions of the trial court's temporary restraining order by spending $250,000 in personal

7

funds to purchase real estate, transferring approximately $4,800,000 in securities to a new life insurance trust, listing her personal residence for sale, and disclosing the contents of the complaint and the allegations contained therein to third parties.

On October 14, 2014, the trial court granted Alexander's petition for preliminary injunctive relief. After setting forth its detailed findings, the court ordered, *inter alia*, that Sandra be temporarily removed as trustee of the "Kemp Trusts"[3] and that Alexander be appointed as temporary trustee of those trusts. A few days later, the trial court issued another order, holding Sandra in civil contempt of its temporary restraining orders and awarding Alexander attorney fees incurred in pursuing his contempt petition. In that order, the court noted that Sandra admitted disposing of approximately $250,000 of her assets by purchasing certain real estate, she impermissibly transferred approximately $4,800,000 in securities to a life insurance trust, and she admitted making certain disclosures that violated "the spirit and the terms" of the orders' confidentiality provisions.

_____

[3] The court defined the Kemp Trusts as including the marital trust, the residual trust, the 1990 Life Insurance Trust, and the "2014 Green Tree II Trust." The 2014 Green Tree II Trust was established during this litigation to comply with the court's order that the management contracts owned by trusts that Sandra created to replace the original Green Tree Trust be transferred into a new trust, with an estate-planning model that followed Alex's intentions.

In late October 2014, Alexander filed the motion giving rise to this appeal, which sought attorney fees and costs of litigation under OCGA § 53-12-302 (a) (4)[4] and OCGA § 9-15-14[5] that he incurred in pursuing the temporary removal of Sandra as trustee of the Kemp Trusts and his appointment as temporary trustee. Alexander contended that, over the course of a four-day hearing, Sandra, in her capacity as trustee, admitted to the misconduct set forth in the trial court's order granting injunctive relief and that her attempts to defend these acts of breach were frivolous and without merit. In addition, he contended that Sandra had ignored his pretrial requests for documentation and rebuffed his repeated attempts to avoid this litigation.

---

[4] *See* OCGA § 53-12-302 (a) (4) (authorizing a trial court, in its discretion, to award expenses of litigation, including reasonable attorney fees, incurred in bringing an action for breach of trust or threat to commit such breach).

[5] *See* OCGA § 9-15-14 (a), (b) (authorizing an award of attorney fees against a party who asserts "a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position," or against a party (or attorney) who "brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if [the court] finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures . . . .").

9

Sandra responded to the motion, arguing that OCGA § 53-12-302 (a) (4) does not authorize an interim award of attorney fees and that the defendants had not engaged in any conduct that would authorize an award of fees under OCGA § 9-15-14 (a) or (b). Following a hearing on the matter, the trial court granted Alexander's motion, finding that a fee award was appropriate under OCGA § 53-12-302 (a) (4). Specifically, the trial court awarded Alexander $270,789.75 in attorney fees and $24,736.34 in costs of litigation, which represented the amounts that he incurred from the first relevant time entry through October 15, 2014, the date of the trial court's order granting injunctive relief. The court declined to reach the issue of whether attorney fees were also authorized under OCGA § 9-15-14. This appeal follows.

We begin by noting that the interpretation of a statute is a question of law, which is "reviewed de novo on appeal."[6] Indeed, when only a question of law is at issue, as here, we "owe no deference to the trial court's ruling and apply the 'plain

---

[6] *Brantley Land & Timber, LLC v. W & D Investments, Inc.*, 316 Ga. App. 277, 279 (729 SE2d 458) (2012) (punctuation omitted); *see also Lue v. Eady*, 297 Ga. 321, 326 (2) (a) (773 SE2d 679) (2015) ( "The interpretation of statutes . . . presents a question of law for the court.").

legal error' standard of review."[7] With these guiding principles in mind, we turn now to Sandra's specific claims of error.

As noted *supra*, Sandra argues that the trial court erred in awarding attorney fees for breach of trust because an interim award of attorney fees prior to the final disposition of the case is not authorized by OCGA § 53-12-302 (a) (4) and because it is not possible to know whether and to what extent Alexander will prevail on his breach-of-trust claim. She also maintains that the trial court erred in awarding fees for claims other than breach of trust. Because we agree that OCGA § 53-12-302 (a) (4) does not authorize an award of attorney fees before the final adjudication of Alexander's breach-of-trust claim, we need not address Sandra's remaining claims of error.

When we interpret any statute, we necessarily begin our analysis with "familiar and binding canons of construction."[8] In considering the meaning of a statute, our

---

[7] *Coker v. Moemeka*, 311 Ga. App. 105, 107 (1) (714 SE2d 642) (2011) (punctuation omitted); *accord Artson, LLC v. Hudson*, 322 Ga. App. 859, 860 (747 SE2d 68) (2013).

[8] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In re L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

11

charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[9] Toward that end, we must afford the statutory text its plain and ordinary meaning,[10] consider the text contextually,[11] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[12] and seek to "avoid a construction that makes some language mere surplusage."[13] And when the language of a statute is "plain and susceptible to only

---

[9] *Holcomb*, 329 Ga. App. at 517 (1) (punctuation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[10] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . .").

[11] *Holcomb*, 329 Ga. App. at 517 (1); *see also Arizona v. Inter Tribal Council of Arizona, Inc*., ___ U.S. ___ (II) (B) (133 SCt 2247, 2254, 186 LEd2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation and citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]").

[12] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a).

[13] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord In the Interest of L.T.*, 325 Ga. App. at 592.

12

one natural and reasonable construction, courts must construe the statute accordingly."[14] Finally, because any statute that "provides for the award of attorney fees is in derogation of common law, it must be strictly construed against the award of such damages."[15]

As recognized by the Supreme Court of Georgia, "[g]enerally an award of attorney fees is not available unless supported by statute or contract."[16] And when a fee award is entered under a statute, the award must meet the requirements of that

---

[14] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[15] *Horton v. Dennis*, 325 Ga. App. 212, 216 (750 SE2d 493) (2013) (punctuation omitted); *accord Joyner v. Raymond James Fin. Servs., Inc.*, 268 Ga. App. 835, 838 (2) (602 SE2d 871) (2004).

[16] *Cason v. Cason*, 281 Ga. 296, 299 (3) (637 SE2d 716) (2006).

13

statute.[17] Turning to the case *sub judice*, the trial court awarded attorney fees under

OCGA § 53-12-302 (a) (4), which provides, in relevant part:

> (a) A trustee who commits a breach of trust shall be personally chargeable with any damages resulting from such breach of trust, including, but not limited to:
>
> . . .
>
> > (4) In the discretion of the court, expenses of litigation, including reasonable attorney's fees incurred in bringing an action on such breach or threat to commit such breach.

Under the plain language of the foregoing statute, Alexander may only be awarded

costs of litigation, including attorney fees, that result from Sandra's breach of trust

---

[17] *See, e.g.*, *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga. App. 513, 515-16 (1) (767 SE2d 829) (2014) (holding that an award of attorney fees was authorized by OCGA § 13-1-11 (a) (3) when the requirements of that statute were satisfied); *Nelson v. Nelson*, 176 Ga. App. 107, 109 (2) (335 SE2d 411) (1985) (finding that the plaintiff was entitled to attorney fees under OCGA § 13-1-11 when all the conditions specified in that statute had been met). *Cf. Ga. Dep't of Corr. v. Couch*, 295 Ga. 469, 485 (3) (b) (759 SE2d 804) (2014) (reversing a portion of attorney fees awarded under OCGA § 9-11-68 (b) (2) because, *inter alia*, the trial court awarded the plaintiffs *all* of their attorney fees in the case when that statute only provides for reasonable attorney fees and expenses of litigation incurred "*from the date of the rejection of [a settlement] offer through the entry of judgment*" (punctuation omitted)).

14

or threat to commit such breach. But here, the trial court awarded attorney fees and costs of litigation under OCGA § 53-12-302 *before* Alexander's breach-of-trust claim had been resolved. Indeed, although the trial court awarded fees after granting Alexander's request for injunctive relief based on its finding that Sandra admitted to certain breaches of her duties as trustee, his breach-of-trust claim itself has not yet been adjudicated on the merits or resulted in damages.

And while no Georgia case specifically addresses whether OCGA § 53-12-302 (a) (4) authorizes an "interim-fee award" (such as the one in this case), the plain language of the statute provides that attorney fees and costs of litigation may be *included* in an award of *damages* resulting from a trustee's breach of trust or threat of such breach.[18] And because this litigation is still pending, no damages have been awarded for Alexander's breach-of-trust claim. As a result, the instant fee award could not have been included in any such damages. To the contrary, Alexander was awarded fees incurred in pursuing his successful request for *injunctive relief*; and it is worth noting that even the trial court's grant of injunctive relief, including its removal of Sandra as trustee of the Kemp Trusts, is only *temporary*.[19]

---

[18] *See* OCGA § 53-12-302 (a) (4).

[19] *See infra* footnote 23.

15

Furthermore, in addressing a former, nearly identical, version of OCGA § 53-12-302 (a) (4),[20] we explained that "there can be no recovery of any kind under this statute, including attorney fees, without a finding of a breach of trust."[21] Specifically, we held that, in the case of a jury trial, the trial court erred in awarding fees under this prior statute when there was no verdict form presenting the jury with the question of whether the defendants breached a fiduciary duty.[22] But here, at this stage in the proceedings, we are not at liberty to presume that a judge or jury will enter a judgment or verdict answering that question.

In its order granting attorney fees, the trial court noted that it was necessary for Alexander to file the instant action and seek Sandra's temporary removal as trustee because of the "established breaches of her fiduciary duty" and evidence that there

---

[20] *See* former OCGA § 53-12-193 (a) (4) (2006) ("[A] trustee who commits a breach of trust is personally chargeable with any damages resulting from the breach of trust including but not limited to: . . . In the discretion of the court, expenses of litigation, including reasonable attorney[ ] fees incurred by the beneficiary in bringing an action on the breach or threat to commit a breach."); *see also Reliance Trust Co. v. Candler*, 294 Ga. 15, 19 (2) n.3 (751 SE2d 47) (2013) (noting that the new Code section (OCGA § 53-12-302) is "materially identical" to former OCGA § 53-12-193).

[21] *Bloodworth v. Bloodworth*, 277 Ga. App. 387, 390 (2) (626 SE2d 589) (2006).

[22] *See id.* at 390 (2).

16

were real and realistic threats of continued and additional breaches of such duties. Nevertheless, even if it was necessary for Alexander to seek temporary injunctive relief, there has been no official adjudication of Alexander's *breach-of-trust claim* on the merits, either through the grant of summary judgment or by a jury verdict.

Nevertheless, Alexander—relying primarily on federal case law—argues that he may be considered the "prevailing party" for purposes of the attorney-fee award because he succeeded on his claim for injunctive relief, which constituted "some degree of success on the merits."[23] However, the issue before us is not whether

---

[23] In support of his argument that we should affirm the trial court's award of interim attorney fees because he prevailed on his request for injunctive relief, Alexander relies primarily on the Supreme Court of the United States's decision in *Lefemine v. Wideman*, ___ U.S. ___ (133 SCt 9, 184 LEd2d 313) (2012), which held that, for purposes of the prevailing-party requirement for receiving an award of attorney fees under 42 U.S.C. § 1988 (b) in a civil-rights action, a plaintiff, who is granted *permanent*-injunctive relief (but no nominal damages) as the final resolution of a civil-rights claim, qualifies as a prevailing party. *See id.* at ___, 133 SCt at 11. The Court reasoned that the grant of an injunction or declaratory relief, like a damages award, will usually satisfy the "test" that "[a] plaintiff 'prevails' . . .when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* But here, unlike in *Lefemine*, Alexander's claims have not been resolved on the merits either by the grant of permanent injunctive relief *or* an award of monetary damages, and even the injunctive relief he has been granted is only temporary. And regardless, unlike 42 U.S.C. § 1988, OCGA § 53-12-302 (a) (4) expressly provides that attorney fees and costs of litigation may be *included* in the calculation of *damages* resulting from a trustee's breach of trust or threat of such breach.

17

attorney fees, in general, may be awarded upon the grant of injunctive relief. Instead, we must decide whether attorney fees may be awarded for breach of trust under the plain meaning of OCGA § 53-12-302 while the *breach-of-trust claim* itself is still pending.

Notwithstanding OCGA § 53-12-302 (a) (4)'s provision that attorney fees for breach of trust may be *included* in an award of damages, Alexander contends that an interim attorney-fee award is authorized by the statute because it has no language expressly prohibiting the award of interim fees. But significantly, although the trial court declined to consider the issue, Alexander also sought attorney fees under OCGA § 9-15-14, which *does* expressly provide for a fee award prior to the disposition of a case. Indeed, unlike OCGA § 53-12-302 (a) (4), OCGA § 9-15-14 explicitly provides that "[a]ttorney[ ] fees and expenses under this Code section may be requested by motion *at any time during the course of the action* but not later than 45 days after the final disposition of the action."[24] Thus, we must presume that if the General Assembly had wished to allow beneficiaries to seek attorney fees under

---

[24] OCGA § 9-15-14 (e) (emphasis supplied).

18

OCGA § 53-12-302 (a) (4) at any time *during* the litigation, it would have expressly authorized them to do so.[25] As a result, we must also presume that the General Assembly's "failure to do so was a matter of considered choice."[26] Finally, to the

---

[25] *See, e.g.*, *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008) ("If the General Assembly had intended to require knowledge of the victim's status as a peace officer in order for the [the statute] to apply, the statutory history shows that it knew how to do so. We must presume that its failure to do so was a matter of considered choice." (punctuation omitted)); *Bauerband v. Jackson Cty.*, 278 Ga. 222, 225-26 (3) (598 SE2d 444) (2004) (noting that the use of the language "sums payable in the individual calendar year renewal term" and "annual payments" elsewhere in a statute showed that, "had the General Assembly wished to require that future obligations be set forth as a sum certain [in the instant provision], it knew how to accomplish that"); *Avila v. State*, 333 Ga. App. 66, 69-70 (775 SE2d 552) (2015) (noting that the General Assembly's use of the phrase "during the commission of crime"in certain subsections of a criminal statute made clear that it knew how to specify that a disqualifying event must occur while the crime was in process, and that the subsection at issue did not include such a limitation); *Inland Paperboard & Packaging, Inc. v. Ga. Dep't of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005) (noting that, if the General Assembly intended to include a particular exemption in a tax statute, the statutory history showed that it knew how to do so).

[26] *Inland Paperboard & Packaging, Inc*, 274 Ga. App. at 104 (punctuation omitted), *quoting Hollowell v. Jove*, 247 Ga. 678, 683 (279 SE2d 430) (1981); *see also Transp. Ins. Co. v. El Chico Restaurants, Inc.*, 271 Ga. 774, 776 (524 SE2d 486) (1999) ("We must presume that the [l]egislature's failure to include the limiting language was a matter of considered choice."); *Citibank (S. Dakota), N.A. v. Graham*, 315 Ga. App. 120, 122 (1) (726 SE2d 617) (2012) (noting that, when the General Assembly provided for a tax refund in a different statutory provision, "we must presume that the legislature's failure to provide a refund under [the statute at issue] was a matter of considered choice" (punctuation omitted)).

extent that OCGA § 53-12-302 (a) (4) is ambiguous regarding whether attorney fees and litigation costs may be awarded based on the trial court's factual findings in a *temporary* order that does not adjudicate any breach-of-trust claims, we must strictly construe the statute *against* the award of fees.[27]

In sum, even assuming that, as Alexander and the trial court maintain, Sandra admitted to multiple breaches of her fiduciary duties as trustee of the Kemp Trusts during an evidentiary hearing and an interim award of attorney fees is an equitable sanction for her misconduct, such fees may not be awarded under OCGA § 53-12-503 (a) (4) unless the requirements of that statute are satisfied.[28] And here, because there has not been a judgment in Alexander's favor on the merits of his breach-of-trust claim, he has not satisfied the requirement of OCGA § 53-12-503 (a) (4) that an award of attorney fees and costs of litigation be included as damages resulting from a breach of trust or threat of such breach.[29]

---

[27] *See Horton*, 325 Ga. App. at 216; *Joyner*, 268 Ga. App. at 838 (2).

[28] *See supra* footnote 17. *Cf.* OCGA § 9-15-14.

[29] We express no opinion regarding whether an award of attorney fees and costs of litigation is warranted in this case under OCGA § 9-15-14. As previously noted, OCGA § 9-15-14 is not limited solely to breach-of-trust claims and expressly provides that such an award may be requested at *any time during the course of the litigation*, but not later than 45 days after the final disposition of the case. *See* OCGA

20

For all the foregoing reasons, we vacate the trial court's award of attorney fees under OCGA § 53-12-503 and remand the case for the trial court to consider whether such fees are warranted at the time when damages, if any, are awarded after the disposition of Alexander's breach-of-trust claim, or, alternatively, whether an award of attorney fees is authorized prior to the disposition of the breach-of-trust claim under OCGA § 9-15-14 (a) or (b).

*Judgment vacated and case remanded. Phipps, P. J., and Rickman, J., concur.*

---

§ 9-15-14 (e). Thus, unlike under OCGA § 53-12-503, the trial court is not precluded from considering whether to award fees and costs under OCGA § 9-15-14 (a) or (b) before the final disposition of this case. In fact, if the requirements of OCGA § 9-15-14 (a) are satisfied, an award of attorney fees and costs of litigation is mandatory. *See Fulton Cty. v. Lord*, 323 Ga. App. 384, 393 (4) (746 SE2d 188) (2013).