**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 29, 2017**

# In the Court of Appeals of Georgia

A17A2058. BISHOP v. GOINS et al.

A17A2059. BISHOP et al. v. POWELL et al.

ELLINGTON, Presiding Judge.

In 2015, Steve and Jodi Bishop appealed from stalking protective orders that the Superior Court of Jasper County entered on petitions filed by their neighbors, Bernie and Michael Goins and Jana and Keith Powell (collectively, "the petitioners"). This Court consolidated the cases and affirmed the orders in an unpublished decision.[1] The petitioners then filed motions for costs and attorney fees incurred in the appellate proceedings. The trial court granted the petitioners' motions for costs and attorney fees. This Court granted the Bishops' applications for discretionary

---

[1] Case No. A16A0895, *Bishop v. Goins*; Case No. A16A0896, *Bishop v. Goins*; Case No. A16A0897, *Bishop et al. v. Powell et al.*, decided September 8, 2016.

appeal of the attorney fee awards to consider whether OCGA § 16-5-94 (d) (3) authorizes such awards in connection with appellate proceedings. Finding that it does, as explained below, we affirm.

As explained in detail in our September 8, 2016 decision, the record shows that the Bishops had contentious relationships with the petitioners, who lived on the same street in Monticello as the Bishops. The petitioners, acting pro se, obtained twelve-month stalking protective orders against the Bishops in 2014.[2] The Bishops did not appeal from those orders.

One year later, the petitioners moved for a three-year extension of the protective orders. At a hearing, the petitioners presented evidence to show that both Steve and Jodi Bishop violated the twelve-month orders during the time that they

---

[2] See OCGA § 16-5-94 (d) ("The [trial] court may grant a protective order or approve a consent agreement to bring about a cessation of conduct constituting stalking.").

> A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-90 (a) (1). The statute further provides that

> the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

Id.

were in effect. The trial court entered three-year protective orders against the Bishops on November 10, 2015. After the Bishops filed notices of appeal from those orders, the petitioners hired attorney Hays McQueen to handle the appeals.

This Court concluded that the petitioners had presented reasonable evidence that the Bishops engaged in continued stalking after the entry of the twelve-month protective orders and, therefore, that the trial court did not abuse its discretion in extending the orders for three years under OCGA § 16-5-94 (d). After this Court affirmed the orders, the petitioners filed motions for costs and attorney fees under OCGA § 16-5-94 (d) (3). The motions expressly sought to recoup attorney fees expended when the cases were on appeal to this Court. The trial court granted the motions, awarding the Goinses $4,907.06 in attorney fees against Steve Bishop and awarding the Powells $4,873.90 against both Jodi and Steve Bishop.

1. The Bishops contend that the trial court erred in failing to grant their motion to dismiss the petitioners' motions for costs and attorney fees. This Court affirmed the stalking protective orders on September 8, 2016; the Powells filed their motion for costs and attorney fees in the trial court on October 3, and the Goinses filed their motion on October 5, 2016; the clerk of the trial court filed the remittiturs from this Court on October 17, 2016. The Bishops argue that, because the petitioners' filed

3

their motions for costs and attorney fees before the filing of the remittiturs, the motions were not properly before the trial court "and any proceedings relative thereto were a nullity."

When a case is remanded from an appellate court to the trial court, the trial court reacquires jurisdiction of a case on the date that its clerk files the remittitur of the appellate court. *Marsh v. Way*, 255 Ga. 284 (1) (336 SE2d 795) (1985).[3] Although the trial court may be initially without jurisdiction to entertain a motion that is filed before the trial court is re-invested with jurisdiction by the filing of the remittitur, however, this does not mean that such a prematurely-filed motion may not be considered by the trial court. Id. As the Supreme Court explained, when a trial court acts on a motion after the filing of the remittitur, it is reasonable to conclude that the trial court adopts that motion as a pending matter. Id. To hold that the trial court could not properly consider a motion unless the movant takes "the redundant and

---

[3] See also *Hagan v. Robert & Co. Assocs.*, 222 Ga. 469, 470-471 (1) (150 SE2d 663) (1966) (The jurisdiction of an appellate court over a case ends when its remittitur is transmitted to and filed in the trial court, and the trial court is thereby reinvested with jurisdiction over the case for all purposes to which such remittitur related.), abrogated by *Jackson v. State*, 286 Ga. 407, 408 (688 SE2d 351) (2010); *Marsh v. Way*, 173 Ga. App. 399, 401 (2) (326 SE2d 499) (1985) ("[T]he date on which the trial court is re-invested with jurisdiction of a case upon remand from the appellate court is the date of the actual filing of the remittitur in the trial court[.]") (citation omitted), affirmed, *Marsh v. Way*, 255 Ga. 284 (1) (336 SE2d 795) (1985).

perfunctory step of refiling the motion would place form over substance[.]" (Citation and punctuation omitted.) Id. Moreover, the Supreme Court explained, a trial court is authorized to hear motions orally presented to it during hearings. Id. Where the trial court's order stated that a motion was presented and argued at a hearing, "[t]he motion, therefore, was effectively presented to the trial court." (Citations and punctuation omitted.) Id. at 284-285 (1) (citations omitted).

Here, the trial court entered its ruling on the petitioners' motions for costs and attorney fees on May 12, 2017, after it was re-invested with jurisdiction by the filing of the remittitur. The Bishops' argument lacks merit.

2. The Bishops contend that OCGA § 16-5-94 (d) (3) does not authorize the award of costs and attorney fees incurred in connection with a litigant's exercise of the right to directly appeal the granting of a stalking protective order. We review a trial court's decision whether to award attorney fees for an abuse of discretion. *Odum v. Russell*, _ Ga. App. _ (2) (802 SE2d 829) (2017) (fees awarded under OCGA §§ 19-6-2 (a) and 19-9-3 (g)); *de Louis v. Sheppard*, 277 Ga. App. 768, 771 (3) (627 SE2d 846) (2006) (fees awarded under OCGA § 16-5-94 (d)).

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." *Suarez v.*

*Halbert*, 246 Ga. App. 822, 824 (543 SE2d 733) (2000). See *Cason v. Cason*, 281 Ga. 296, 299 (2) (637 SE2d 716) (2006) (accord); *Cary v. Guiragossian*, 270 Ga. 192, 195 (4) (508 SE2d 403) (1998) (accord). A determination of whether appellate fees authorized by statute may be awarded turns on the language of the statute permitting the recovery of attorney fees. *Kautter v. Kautter*, 286 Ga. 16, 19-20 (4) (c) (685 SE2d 266) (2009). The statute invoked by the petitioners, OCGA § 16-5-94 (d), provides, in relevant part, that a "court may grant a protective order or approve a consent agreement to bring about a cessation of conduct constituting stalking. Orders or agreements may . . . [a]ward costs and attorney's fees to either party[.]" OCGA § 16-5-94 (d) (3).

> When we interpret any statute, we necessarily begin our analysis with familiar and binding canons of construction. In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. And when the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. Finally, because any statute that provides for the

6

award of attorney fees is in derogation of common law, it must be strictly construed against the award of such damages.

(Punctuation and footnotes omitted.) *Kemp v. Kemp*, 337 Ga. App. 627, 632-633 (788 SE2d 517) (2016) (construing attorney fee provision in OCGA § 53-12-302). OCGA § 16-5-94 (d) provides that a stalking protective order may award costs and attorney fees; it does not expressly provide that a separate order issued post-appeal may award costs and appellate attorney fees.

Our appellate courts have held that some attorney fee statutes authorize an award of appellate attorney fees and that other statutes do not. We have held that "neither OCGA § 9-15-14 (b) nor OCGA § 13-6-11 authorizes a trial court to award expenses of litigation for proceedings before the appellate courts, because these statutes base the award of litigation expenses upon conduct that occurred at the trial court level." (Citation and punctuation omitted.) *Springside Condo. Assn. Inc. v. Harpagon Co. LLC*, 298 Ga. App. 39, 40 (1) (679 SE2d 85) (2009).[4]

_____

[4] See *In re Estate of Zeigler*, 295 Ga. App. 156, 161 (2) (d) (671 SE2d 218) (2008) (accord); OCGA §§ 9-15-14 (b) ("The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct,

In some statutes, on the other hand, the General Assembly expressly included fees for legal services incurred during an appeal.[5] The Supreme Court of Georgia has interpreted a statute that gives the trial court the discretion to award fees "at any time" during a case to include an award of appellate attorney fees.[6] A party can even

including, but not limited to, abuses of discovery procedures[.]"); 13-6-11 ("The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); see also *Kautter v. Kautter*, 286 Ga. at 19-20 (4) (c) ("Attorney fees incurred in connection with appellate proceedings are not recoverable under OCGA § 9-15-14 because implicit in the language of that statute is that a court of record of this state may impose reasonable and necessary attorney fees and expenses of litigation for proceedings before *that court*, which were brought for purposes of harassment or delay or lacked substantial justification.") (citation and punctuation omitted; emphasis in original); cf. OCGA § 9-11-68 (b) (expressly limiting an award of fees under the statute to those incurred from the date of the rejection of an offer of settlement through the entry of judgment).

[5] See *Yates Paving & Grading Co. v. Bryan County*, 265 Ga. App. 578, 582-584 (594 SE2d 756) (2004) (Appellate attorney fees may be recovered under the Georgia Prompt Pay Act, pursuant to OCGA § 13-11-8, which provides in pertinent part, "[i]n any action to enforce a claim under [the Act], the prevailing party is entitled to recover a reasonable fee for the services of its attorney including but not limited to trial and appeal and arbitration[.]").

[6] *Kautter v. Kautter*, 286 Ga. at 19-20 (4) (c) (Appellate attorney fees may be recovered under OCGA § 19-6-2 (a), which provides in pertinent part, "[t]he grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation [of an action] for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case . . . shall be . . . [w]ithin the sound discretion of the court.").

recover attorney fees incurred on appeal when attorney fees in general are statutorily authorized. *Evans County Bd. of Commrs. v. Claxton Enter.*, 255 Ga. App. 656, 659 (3) (566 SE2d 399) (2002). In *Evans County*, we noted that nothing in the fee provision under the Open Meetings Act expressly limited recovery of attorney fees to those incurred in trial court litigation. Id.[7] We noted that the General Assembly used the term "proceeding," which can apply "to a court of any level," and inferred that the recovery of fees was not intended to apply to litigation only in the trial court. Id. Then, we reasoned that the Act was intended to protect the public from closed-door politics and that, because permitting recovery of fees and costs incurred on appeal encourages private enforcement of the Act's provisions, making appellate fees compensable would further the purpose of the Act. Id. at 659-660 (3).[8]

---

[7] See OCGA § 50-14-5 (b) (In any action brought to enforce the provisions of the Open Meetings Act, "in which the court determines that an agency acted without substantial justification in not complying with [the Act], the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney's fees and other litigation costs reasonably incurred. Whether the position of the complaining party was substantially justified shall be determined on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought.").

[8] See also *Springside Condo. Assn. Inc. v. Harpagon Co. LLC*, 298 Ga. App. at 40 (1) (Appellate attorney fees may be recovered under the Georgia Condominium Act, pursuant to OCGA § 44-3-109 (b) (3), which provides, "[t]o the extent that the condominium instruments provide, the personal obligation of the unit owner and the lien for assessments shall also include . . . [t]he costs of collection, including court costs . . .

Similarly, in this case, nothing in the fee provision at issue expressly limits recovery of attorney fees to those incurred in trial court litigation. And we conclude that making appellate fees compensable would further the purpose of the Act, which is to deter harassing and intimidating behavior and to protect victims from harm, by enabling a stalking victim to defend a protective order on appeal.[9] For these reasons, we conclude that the trial court did not abuse its discretion in awarding costs and attorney fees incurred by the petitioners on appeal.[10]

*Judgments affirmed. Andrews and Rickman, JJ., concur.*

---

and reasonable attorney's fees actually incurred."); *In re Estate of Zeigler*, 295 Ga. App. at 161 (2) (d) (Appellate attorney fees could be recovered in a breach of trust action, pursuant to former OCGA § 53-12-193 (a) (4), which provided: "a trustee who commits a breach of trust is personally chargeable with any damages resulting from the breach of trust including but not limited to[,] . . . [i]n the discretion of the court, expenses of litigation, including reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach or threat to commit a breach.").

[9] See n. 2, supra.

[10] We note that the Bishops challenged only the trial court's authority to award appellate attorney fees; they did not challenge as unreasonable the specific amounts awarded.