**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 25, 2018**

# In the Court of Appeals of Georgia

A18A0434. MAYS v. THE STATE.

DILLARD, Chief Judge.

In August 2017, Damon Mays pleaded guilty as a "first offender" under OCGA § 42-8-60, *et seq*. ("the First Offender Act") to one count each of aggravated assault, misdemeanor family-violence battery, and third-degree cruelty to children. At sentencing, the trial court adopted the State's recommendation to sentence Mays to ten years of probation. On appeal, Mays argues that, in sentencing him, the trial court erred by failing to include a "behavioral[-]incentive date," which is required under OCGA § 17-10-1 (a) (1) (B). For the reasons set forth *infra*, we affirm.

The record shows that on August 9, 2017, Mays pleaded guilty to the foregoing offenses as part of a negotiated plea agreement with the State. During sentencing, Mays acknowledged that, under the plea agreement, he would be given first-offender

treatment[1] and sentenced to ten years of probation. Mays also testified that he understood the benefit of being sentenced as a first offender—*i.e.*, that if he successfully completed probation without any violations or committing other crimes, he would not be adjudicated guilty of the charged offenses or considered a convicted felon. But Mays also recognized that, if he violated his probation or committed a new crime, he could then be adjudicated guilty of these offenses and resentenced to the maximum possible punishment. Having been advised of these consequences, Mays reiterated his desire to be sentenced as a first offender.

Ultimately, after advising Mays of the various rights he was waiving by pleading guilty, as well as hearing the factual basis for the charges, the trial court accepted Mays's guilty plea as knowing and voluntary and sentenced him to ten years of probation. Immediately thereafter, Mays requested that the court include a behavioral-incentive date in his sentence, arguing that it was required by OCGA § 17-10-1 (a) (1) (B). But the trial court disagreed with Mays, finding that the statute

---

[1] Under OCGA § 42-8-60 (a), "[w]hen a defendant has not been previously convicted of a felony, the court may, upon a guilty verdict or plea of guilty or nolo contendere and before an adjudication of guilt, without entering a judgment of guilt and with the consent of the defendant, defer further proceedings and (1) [p]lace the defendant on probation; or (2) [s]entence the defendant to a term of confinement."

2

did not apply when a defendant is sentenced as a first offender.[2] In the end, rather than make a final ruling, the trial court stated that "[i]f it turns out" that its interpretation of the new statute was incorrect, "Mays could apply to have [his] probation terminated three years from [the date of the sentencing hearing]." Nevertheless, following the hearing, the trial court issued an order sentencing Mays to ten years of probation as a first offender without making any reference to a behavioral-incentive date. This appeal follows.

In his sole enumeration of error, Mays argues that the trial court erred in failing to give him a behavioral-incentive date as required by OCGA § 17-10-1 (a) (1) (B). We disagree.

---

[2] The trial court's reasoning for declining to include a behavioral-incentive date in Mays's sentence is unclear. At first, the court stated, "I disagree with that interpretation. My interpretation is that if it is not a [f]irst [o]ffender case and it's straight probation, then I'm to give a behavioral[-]incentive date if I don't give someone probation, but it's not one of those crimes that's laid out there. So I disagree with that." But the court did not explain where certain crimes were "laid out," what those crimes were, or how any particular crimes applied to the behavioral-incentive-date requirement. Further, OCGA § 17-10-1 (a) (1) (B) applies when the defendant has *any* prior felony convictions. Nevertheless, the court made clear that, at the very least, it did not believe the behavioral-incentive-date requirement applied when sentencing a defendant solely to probation as a first offender. Although the court again stated, "it's not one of those whatever crimes listed there" without further explanation or clarification, it is evident, regardless of its reasoning, the court rejected Mays's argument that it must include a behavioral-incentive date in his sentence.

3

Under Georgia law, a sentence is void if "the court imposes punishment that the law does not allow."[3] But a sentence that falls within the prescribed statutory limits is "legally authorized and is not subject to review by this Court."[4] Here, Mays contends his sentence does *not* fall within the prescribed statutory limits because it violates OCGA § 17-10-1 (a) (1) (B)'s requirement that the court impose a behavioral-incentive date. The interpretation of a statute is, of course, a question of law, which is reviewed *de novo* on appeal.[5] Indeed, when only a question of law is at issue, as here, "we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[6]

When interpreting any statute, we necessarily begin our analysis with "familiar and binding canons of construction."[7] In considering the meaning of a statute, our

---

[3] *Few v. State*, 311 Ga. App. 608, 608 (716 SE2d 644) (2011) (punctuation omitted); *accord Spargo v. State*, 332 Ga. App. 410, 411 (773 SE2d 35) (2015).

[4] *Few*, 311 Ga. App. at 608; *Wilder v. State*, 343 Ga. App. 110, 112 (806 SE2d 200) (2017).

[5] *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016) (punctuation omitted); *accord Jenkins v. State*, 284 Ga. 642, 645 (2) (670 SE2d 425) (2008).

[6] *Kemp*, 337 Ga. App. at 632 (punctuation omitted); *accord Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

[7] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014); *see, e.g.,*

charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[8] Toward that end, we must afford the statutory text its plain and ordinary meaning,[9] consider the text contextually,[10] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[11]

*McNair v. State*, 293 Ga. 282, 284 (745 SE2d 646) (2013) ("The rule of lenity is a rule of construction that is applied only when an ambiguity still exists *after having applied the traditional canons of statutory construction*." (emphasis supplied)).

[8] *Holcomb*, 329 Ga. App. at 517 (1) (punctuation omitted); *accord Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015); *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014); *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[9] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . .").

[10] *Holcomb*, 329 Ga. App. at 517 (1); *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, ___ U.S. ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation and citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used" (punctuation and citation omitted)).

[11] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Zaldivar v. Prickett*, 297 Ga. 589, 591 (774 SE2d 688) (2015); *FDIC v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014).

and seek to "avoid a construction that makes some language mere surplusage."[12] Further, when the language of a statute is "plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[13]

Turning to the statute at hand, which became effective on July 1, 2017,[14] OCGA § 17-10-1 (a) (1) (B) provides, in relevant part:

> When a defendant is convicted of felony offenses, has no prior felony conviction, and the court imposes a sentence of probation, not to include a split sentence, the court shall include a behavioral[-]incentive date in its sentencing order that does not exceed three years from the date such sentence is imposed.

Here, it is undisputed that Mays has no prior felony convictions, and the trial court imposed only a sentence of probation. But significantly, the plain language of OCGA § 17-10-1 (a) (1) (B) provides that it only applies "[w]hen a defendant is *convicted*

---

[12] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord In the Interest of L. T.*, 325 Ga. App. at 592; *Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014).

[13] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[14] *See* Ga. L. 2017, Act 226, § 2-1.

of felony offenses."[15] Because Mays was sentenced as a first offender, he was not *convicted* of any felony offenses. Indeed, as explained by our Supreme Court, "[a] first offender's guilty plea *does not constitute a 'conviction'* as that term is defined in the Criminal Code of Georgia . . . ."[16] And Mays acknowledged as much when he requested and was granted first-offender status at sentencing—*i.e.*, that if he successfully completed probation without any violations or committing other crimes, he would not be adjudicated guilty of the charged offenses or considered a convicted felon. Thus, given the plain language of OCGA § 17-10-1 (a) (1) (B), the trial court correctly concluded that it was not required to include a behavioral-incentive date in Mays's ten-year sentence of probation because his guilty plea did not result in a conviction. Significantly, in previous cases, Georgia courts have held that when a defendant pleads guilty to a felony as a first offender and his sentence of probation

---

[15] (Emphasis supplied).

[16] *Williams v. State*, 301 Ga. 829, 831 (2) (804 SE2d 398) (2017) (punctuation omitted and emphasis supplied); *accord Davis v. State*, 273 Ga. 14, 15 (537 SE2d 663) (2000); *see Cook v. State*, 338 Ga. App. 489, 497 (4) (790 SE2d 283) (2016) ("[U]nder the first offender statute, until an adjudication of guilt is entered, there is no conviction. The case has, in effect, been suspended during the period of probation until eventually the probation is either revoked or it is discharged; unless it is revoked, there is no conviction." (punctuation and footnotes omitted)).

is never discharged or revoked, other statutes requiring a prior felony conviction do not apply when the defendant commits a subsequent crime.[17]

Nevertheless, Mays argues that, in enacting OCGA § 17-10-1 (a) (1) (B), the General Assembly could not have "intended" to preclude defendants who qualify for first-offender treatment from the benefit of a behavioral-incentive date because doing so does not "square with common sense or good public policy." And in support, he lists several allegedly undesirable consequences of interpreting the statute as the trial court did. For example, he claims that the trial court's interpretation of OCGA § 17-10-1 (a) (1) (B) would force defendants to choose between receiving first-offender treatment and a behavioral-incentive date. May's other examples highlight his

---

[17] *See, e.g.*, *Davis*, 273 Ga. at 14-15 (holding that the trial court improperly sentenced the defendant as a recidivist under OCGA § 17-10-7 (b) (2), which applies to a person who has been *convicted* of a serious violent felony, and the defendant pleaded guilty to the predicate felonies as a first offender, his probation was never discharged or revoked, and he was never convicted of those predicate crimes); *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998) ("A first offender's guilty plea does not constitute a 'conviction' as that term is defined in the Criminal Code of Georgia (OCGA § 16-1-3 (4)), and may not serve as the basis for a statutory suspension of a driver's license."); *Lee v. State*, 294 Ga. App. 796, 798 (670 SE2d 488) (2008) (holding that evidence that the defendant had previously pleaded guilty to a felony as a first offender was inadmissible to impeach him at a trial on subsequent charges because "unless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first[-]offender record").

concern that, under the trial court's interpretation of this statute, there would be instances when a defendant who *had been* convicted of a felony would receive more favorable treatment from a behavioral-incentive date than first-time offender status. In sum, Mays contends that a behavioral-incentive date is "clearly meant to encourage good behavior on probation with the incentive of receiving early termination of the probated sentence" and "[i]t makes common sense that the legislature would intend to provide such an incentive to first[-]time felony defendants."

Generally speaking, Mays is correct that "courts must construe statutes in a way that square[s] with common sense and sound reasoning."[18] Furthermore, we have a duty to "consider the results and consequences of any proposed construction and not . . . construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature [as evinced by the relevant text]."[19] But even if

---

[18] *Palmyra Park Hosp., Inc. v. Phoebe Sumter Med. Ctr.*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011) (punctuation omitted); *accord Staley v. State*, 284 Ga. 873, 874 (1) (672 SE2d 615) (2009); *see Muscogee Cty. Bd. of Tax Assessors v. Pace Indus., Inc.*, 307 Ga. App. 532, 535 (705 SE2d 678) (2011) ("Our interpretation of [a] statute must square with common sense and sound reasoning." (punctuation omitted)).

[19] *Palmyra Park Hosp., Inc.*, 310 Ga. App. at 491 (1) (punctuation omitted); *accord Staley*, 284 Ga. at 873-74 (1); *see McKinney v. Fuciarelli*, 298 Ga. 873, 877 (785 SE2d 861) (2016) (holding that the language of a statute did not meet the absurdity test and noting that, while reasonable legislators may have written the

9

Mays's public-policy concerns are valid, he has not identified any absurd results of adhering to the plain language of OCGA § 17-10-1 (a) (1) (B). And as we have repeatedly emphasized, when the language of a statute is "plain and susceptible to only one natural and reasonable construction, [as here,] courts must construe the statute accordingly."[20] This is because under our "system of separation of powers this Court does not have the authority to rewrite statutes."[21] Indeed, the doctrine of

statute differently, the application of the plain language of the statute was "not so monstrous that all mankind would, without hesitation, unite in rejecting [it]." (punctuation omitted)); *Inagawa v. Fayette Cty.*, 291 Ga. 715, 717 (1) (732 SE2d 421) (2012) (explaining that when interpreting statutes, "[w]e are required to give all words in the enactment due weight and meaning and are forbidden from disregarding any legislative language unless the failure to do so would lead to an absurdity *manifestly* not intended by the legislature [as evinced by the relevant statutory text]." (punctuation omitted and emphasis supplied)); *Spivey v. State*, 274 Ga. App. 834, 835 (1) (619 SE2d 346) (2005) (noting that when interpreting a statute, "we begin with *the literal text*; where *the literal text* of a statute is plain and does not lead to absurd or impracticable consequences, we apply the statute as written without further inquiry." (emphasis supplied); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 239 (1st ed. 2012) ("The doctrine of absurdity is meant to correct obviously *unintended* dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense.").

[20] *Chase*, 285 Ga. at 695 (2); *see supra* note 13 & accompanying text.

[21] *Allen v. Wright*, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007) (punctuation omitted); *accord State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006); *see West v. State*, 300 Ga. 39, 44 (793 SE2d 57) (2016) ("While this Court has the authority to narrow a statute to avoid unconstitutional infirmities under our system of separation

separation of powers is "an immutable constitutional principle which must be strictly enforced[,] [and] [u]nder that doctrine, statutory construction belongs to the courts, legislation to the legislature."[22] Simply put, regardless of whether Mays or this Court would have drafted OCGA § 17-10-1 (a) (1) (B) differently based on public policy or fairness concerns, Mays fails to identify any portion of the relevant statutory *text* that is ambiguous, and under such circumstances, we must abide by the plain language of the statute, which requires a prior *conviction*.[23] In fact, as noted *supra*,

of powers , this Court does not have the authority to rewrite statutes." (punctuation omitted)).

[22] *Allen*, 282 Ga. at 12 (1) (punctuation omitted); *accord Turner v. Ga. River Network*, 297 Ga. 306, 308-09 (773 SE2d 706) (2015); *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 276 (3) (658 SE2d 603) (2008); *see also Bellsouth Telecommunications, LLC v. Cobb Cty.*, 342 Ga. App. 323, 335 (802 SE2d 686) (2017) (Dillard, J., concurring fully and specially), *cert. granted* (April 16, 2018) ("The separation of powers is essential to the maintenance of our constitutional republic, and it is high time that our discussion of statutory interpretation reflects the reality of our jurisprudence and acknowledges the strict demarcation line between judicial interpretation and legislating. We are judges, not black-robed philosophers.").

[23] *See supra* note 13 & accompanying text; *see also Abdulkadir v. State*, 279 Ga. 122, 124 (2) (610 SE2d 50) (2005) (holding that, while there may be compelling reasons to apply the rape-shield statute to crimes other than rape, the General Assembly drafted the statute to only apply to rape, and any expansion of that statute must also come from that legislative body); *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987) ("Expressions of the legislature through statutes are conclusive on the question of public policy; and courts cannot declare agreements or acts authorized by statute to be contrary to public policy."); *Eckhardt*

Georgia courts have done just that when interpreting other statutes that are only applicable when the defendant has a prior conviction.[24]

For all these reasons, we affirm the trial court's decision not to include a behavioral-incentive date in Mays's sentence.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

*v. Yerkes Reg'l Primate Ctr*., 254 Ga. App. 38, 39 (1) (561 SE2d 164) (2002) (explaining that "[r]egardless of whether this [C]ourt agrees with appellants that there should be a public policy exception to the at-will doctrine [at issue in the] case, we are constrained to leave that determination to the General Assembly." (emphasis supplied)).

[24] *See supra* 17.