**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**June 15, 2012**

# In the Court of Appeals of Georgia

A12A0613. BRANTLEY LAND & TIMBER, LLC v. W & D INVESTMENTS, INC.

A12A0614. HAWK'S LANDING DEVELOPMENT COMPANY v. W & D INVESTMENTS, INC.

AD-029 & 030

ADAMS, Judge.

On May 3, 2007, W & D Investments, Inc. ("W & D") entered into separate agreements with Brantley Land & Timber, LLC ("Brantley") and Hawk's Landing Development Company ("Hawk's") (collectively referred to herein as the "Developers"), under which W & D was to install water systems to provide water service to Hawk's development, Hawk's Landing, and Brantley's developments, Eagle's Crest/Satilla Plantation (the "Agreements"). On January 12, 2010, W & D brought a breach of contract action against Hawk's and on April 25, 2011 filed a similar action against Brantley. These suits alleged that the Developers each failed

to pay amounts due and owing under the Agreements. Hawk's and Brantley each filed answers denying liability and asserting counterclaims against W & D. Subsequently, the Developers each filed an "Amended Answer and Counterclaim," in which they asserted an additional counterclaim contending that W & D was required under OCGA § 43-14-8.2 to have a utility contractor license; that W & D did not possess such a license; that by failing to secure this license, W & D lacked the capacity to lawfully install water systems; and thus that the Agreements were unenforceable (the "Amended Counterclaim"). The Developers accordingly sought reimbursement for all sums paid to W & D under the Agreements. In addition, the Developers each filed motions for summary judgment on the Amended Counterclaim, and W & D filed cross-motions for partial summary judgment as to that counterclaim. The trial court granted W & D's motion for partial summary judgment and denied the Developers' motions for summary judgment. Brantley and Hawk's each filed separate appeals from that order.

The Developers are correct that a party's failure to obtain a license to engage in certain businesses can void the party's business contracts, if the licensing requirement is part of regulatory scheme in the public interest:

2

"'[W]here a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable.' [Cits.]" *Bernstein v. Peters,* 68 Ga. App. 218, 221 (1) (22 SE2d 614) (1942); accord *Robinson v. Colonial Discount Co.,* 106 Ga. App. 274, 277 (3) (126 SE2d 824) (1962).

*Bowers v. Howell,* 203 Ga. App. 636, 637 (1) (417 SE2d 392) (1992). Beginning June 30, 1994, entities engaged in the business of utility contracting in Georgia have been required to have a utility contractor license under OCGA § 43-14-8.2 (b).[1] And this Court has previously held that the licensing requirements under Chapter 14 of Title 43 are not merely revenue measures, but rather were intended to regulate the covered industries, including utility contracting, in the public interest:

---

[1] That statute provides:

"After June 30, 1994, no sole proprietorship, partnership, or corporation shall have the right to engage in the business of utility contracting unless such business holds a utility contractor license and there is regularly connected with such business a person or persons who holds a valid utility manager certificate issued under this chapter."

OCGA § 43-14-8.2 (b) (1).

> In the Georgia Code relating to the regulation of certain businesses, including [utility contracting], the State of Georgia declared the practice of [utility] contracting to be a business or profession "affecting the public interest." OCGA § 43-14-1. The State, therefore, regulates the profession for the purpose of "safeguarding homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, or unsafe [utility contracting]." Id.

*JR Const./Electric v. Ordner Constr. Co.*, 294 Ga. App. 453, 453-454 (669 SE2d 224) (2008). Therefore, the sole issue before us is whether the trial court properly found that W & D was not engaged in utility contracting as that term is defined under Chapter 14.

"The interpretation of a statute is a question of law, which is reviewed de novo on appeal." (Citation, punctuation, and footnote omitted.) *Joe Ray Bonding Co. v. State of Ga.,* 284 Ga. App. 687, 688 (644 SE2d 501) (2007). And our Supreme Court has summarized the guidelines for statutory interpretation, as follows:

> In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce

4

any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1–3–1(a).

(Punctuation and footnotes omitted.) *Busch v. State,* 271 Ga. 591, 592 (523 SE2d 21) (1999).

The Georgia Code defines "utility contracting" to mean "undertaking to construct, erect, alter, or repair or have constructed, erected, altered, or repaired any utility system." OCGA § 43-14-2 (13). And "'[u]tility system" means:

> *[a]ny system at least five feet underground*, when installed or accessed by trenching, open cut, cut and cover, or other similar construction methods which install or access the system from the ground surface, *including*, but not limited to, gas distribution systems, electrical distribution systems, communication systems, *water supply systems*, and sanitary sewerage and drainage systems;

(Emphasis supplied.) OCGA § 43-14-2 (17) (A).[2]

---

[2] Additionally, subsection B of OCGA § 43-14-2 (17) defines utility systems to include:

> Reservoirs and filtration plants, water and waste-water treatment plants, leachate collection and treatment systems associated with landfills, and

We interpret this statute under its plain terms as defining utility systems to include only water supply systems at least five feet underground that are installed or accessed from the ground surface. Thus, any water supply systems less than five feet underground would not be considered utility systems under the statute and would not require a utility contractor license "to construct, erect, alter, or repair or have constructed, erected, altered, or repaired." Here, it is undisputed that "none of the trenching, cutting and installation related to the construction and access of the system[s on the Developers properties] was done at a depth of five feet or deeper below the surface." Thus, we conclude that W & D was not engaged in utility contracting in connection with the Developers' properties. It follows, therefore, that W & D was not required to have a utility contractor license to perform work under the Agreements, and that those Agreements are not unenforceable because W & D did not possess such a license.

---

pump stations, when the system distributes or collects a service, product, or commodity for which a fee or price is paid for said service, product, or commodity or for the disposal of said service, product, or commodity.

6

We are unpersuaded by the Developers' argument that the legislative history of the statute somehow indicates that the General Assembly intended the statute to apply to systems installed at less than five feet deep. The statutory language clearly indicates otherwise. And "[a]s our Supreme Court has explained, the search for legislative intent must begin with the words of the statute, and if those words are clear and unambiguous, it also must end there." (Citation omitted.) *Speedway Motorsports v. Pinnacle Bank*, __ Ga. App. __ (2) (Case No. A11A2350, decided March 29, 2012). Thus, it is well settled that "[o]ne of the first rules to guide a Court in applying a Statute, is never to *undertake construction*, where the law is perfectly plain." (Emphasis in original.) *Kerese v. State*, 10 Ga. 95, 96-97 (1) (1851). See also *Six Flags Over Georgia II v. Kull,* 276 Ga. 210, 211 (576 SE2d 880) (2003) ("Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."). We find that the language of this statute "is perfectly plain, and its meaning is neither absurd, impossible of enforcement, or unreasonable." *Kerese v. State,* 10 Ga. at 97 (1). See, e. g., 29 CFR §§ 1926.650-652 (OSHA regulations requiring protective plans such as trenching, sloping and shielding for excavations at a depth greater than five feet).

In fact, at least one regulation passed under Chapter 14 supports our interpretation that the legislature intended to distinguish between utility systems installed at least five feet underground and those installed less than five feet below the surface. Chapter 14 requires all utility managers to obtain a utility manager certificate issued by the Division of Utility Contractors. OCGA § 43-14-8.3. And the regulation promulgated for obtaining a statewide utility manager certificate requires that all applicants must have a minimum of two years of experience "as a licensed utility foreman in the State of Georgia or equivalent experience from another state as a manager or foreman in the field for the construction, erection, alteration, or repair *of utility systems at least five feet underground*, including but not limited to 12 hours of actual instruction from a board-approved safety training course." (Emphasis supplied.) Ga. R. & Reg. 121-2-.08. Cf. *Northeast Georgia Medical Center. v. Winder HMA*, 303 Ga. App. 50, 56 (2) (b) (693 SE2d 110) (2010) (reviewing court must give deference to the agency's interpretation of statutes it is charged with enforcing or administering and to agency's own rules and regulations because "agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches") (Citations and punctuation omitted.).

Accordingly, we find that the trial court properly denied the Developers' motions for summary judgment and granted W & D's motions for partial summary judgment on the Amended Counterclaim.

*Judgments affirmed. Barnes, P. J., and McFadden, J., concur.*