**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1588. RESTOR-IT, INC. v. BECK.                    HO-054

HODGES, Judge.

This appeal involves a suit for breach of contract, quantum meruit, open account, and attorney fees filed by Restor-It, Inc. against Ashlyn Beck following remodeling work Restor-It performed for Beck. The trial court granted summary judgment to Beck on all claims, and Restor-It appeals. Because the trial court properly concluded that Restor-It's performance of electrical and plumbing work without a license, as required by OCGA § 43-14-8, voided the contract, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

> On appeal from the grant of summary judgment, the appellate court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Baja Properties v. Mattera*, 345 Ga. App. 101, 102 (1) (812 SE2d 358) (2018); see also *Wagner v. Robinson*, 329 Ga. App. 169 (764 SE2d 189) (2014).

Viewed in that light, the record shows the following facts. Restor-It is a company that provides cleaning, painting, maintenance, and renovation services. In October 2014, Beck contacted Restor-It to provide an estimate for the repair and gut-renovation of a master bathroom, dryer vent repair, and installation of hardwood flooring. She claims "Restor-It affirmatively represented . . . that they held a valid general contractor's license[,]" though Restor-It asserts it "never stated, in writing or orally, that Restor-It had a valid general or residential contractor's license." In fact, Restor-It admits it is not a licensed general or residential contractor and only holds a business license.

On January 14, 2015, Beck signed a contact with Restor-It for the bathroom renovation and construction, as well as other items. The agreement stated that Restor-It was "Fully Licensed and Insured." The estimate for the job totaled $23,545.16, and

Beck made a down payment of $11,700.00. The invoice recapped the job by category and indicated that 2.12% of the total job consisted of electrical work and 18.74% of the job consisted of plumbing work. It is undisputed that Restor-It performed electrical and plumbing work during the course of the project.

Restor-It ultimately abandoned the project following a leak that led to severe flooding damage. Asserting it performed additional duties outside the contract in an effort to mitigate the water damage, Restor-It provided Beck with a final invoice for services totaling $44,891.66. The recap of job categories on this invoice indicated that 2.50% of the total job was dedicated to electrical work and 14.36% of the total job was dedicated to plumbing work.

On May 26, 2017, Restor-It sued Beck, seeking to recover the difference between its final invoice and the down payment made by Beck ($33,191.66), pre and post judgment interest, and attorney fees. Beck subsequently moved for summary judgment, claiming she was not liable because Restor-It did not possess the licenses required under Georgia law for the work it performed, therefore making the contract void and unenforceable. Restor-It argued that it was acting as a specialty contractor, exempt from licensing requirements. The trial court granted Beck's motion for summary judgment, specifically finding that the agreement between Beck and Restor-

3

It "plainly lists extensive and detailed electrical and plumbing work costing thousands of dollars[,]" that Restor-It failed to demonstrate that the work was performed by licensed electrical and plumbing contractors, and that, therefore, the contract between Beck and Restor-It was void and unenforceable. Restor-It appeals.

Although Restor-It raises a number of arguments on appeal, the main issues before us are whether the trial court properly found that Restor-It performed electrical and plumbing work, whether Restor-It was exempt from the requirement that it be licensed to perform such work, and whether the contract between Restor-It and Beck is void based on Restor-It's performance of such work. To answer these questions, we must look to the applicable statutes and construe them according to our rules of statutory construction.

At the outset, we note that the interpretation of a statute is a question of law, which is "reviewed de novo on appeal." (Punctuation omitted.) *Brantley Land & Timber, LLC v. W & D Investments, Inc.*, 316 Ga. App. 277, 279 (729 SE2d 458) (2012). "Indeed, when only a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Citation and punctuation omitted.) *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016). And when interpreting any statute, "we necessarily begin our analysis with

4

familiar and binding canons of construction." (Citation and punctuation omitted.) Id.

In considering the meaning of a statute, our charge as an appellate court is to

"presume that the General Assembly meant what it said and said what it meant."

(Citation and punctuation omitted.) *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765

SE2d 687) (2014); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337)

(2013)*.* Toward that end,

> we must afford the statutory text its plain and ordinary meaning,
> consider the text contextually, read the text in its most natural and
> reasonable way, as an ordinary speaker of the English language would,
> and seek to avoid a construction that makes some language mere
> surplusage.

(Citations and punctuation omitted.) *Holcomb*, 329 Ga. App. at 517-518 (1); accord

*Deal*, 294 Ga. at 172-173 (1) (a). Further, when the language of a statute is "plain and

susceptible to only one natural and reasonable construction, courts must construe the

statute accordingly." (Citation and punctuation omitted.) *Holcomb*, 329 Ga. App. at

518 (1) (punctuation omitted); see *Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text

is clear and unambiguous, we attribute to the statute its plain meaning, and our search

for statutory meaning is at an end.") (punctuation omitted). Put another way, "[a]s

long as the language is clear and does not lead to an unreasonable or absurd result,

it is the *sole* evidence of the ultimate legislative intent." (Punctuation omitted;

5

emphasis supplied.) *Ray v. Barber*, 273 Ga. 856, 856 (1) (548 SE2d 283) (2001);

*accord Shorter College v. Baptist Convention of Ga.*, 279 Ga. 466, 470 (1) (614 SE2d

37) (2005).

The statutes at issue in this case are included in Chapter 41 of Title 43 of the

Georgia Code, which provides a broad statewide licensing system for residential and

general contractors, and Chapter 14 of Title 43, which provides a statewide licensing

system specifically for electrical and plumbing contractors. OCGA § 43-41-17 (b)

provides, in pertinent part,

> As a matter of public policy, any contract entered into on or after July
> 1, 2008, for the performance of work for which a residential contractor
> or general contractor license is required by this chapter and not
> otherwise exempted under this chapter and which is between an owner
> and a contractor who does not have a valid and current license required
> for such work in accordance with this chapter shall be unenforceable in
> law or in equity by the unlicensed contractor. . . . Notwithstanding any
> other provision of law to the contrary, if a contract is rendered
> unenforceable under this subsection, no lien or bond claim shall exist in
> favor of the unlicensed contractor for any labor, services, or materials
> provided under the contract or any amendment thereto.

A "general contractor" is defined as "a contractor whose services are unlimited as to

the type of work which he or she may do," subject to certain restrictions. OCGA § 43-

41-2 (5). A "residential contractor" is also defined in OCGA § 43-41-2 (9), but such

a definition is irrelevant in this case because the parties do not dispute that Restor-It is not a residential contractor.

Restor-It admits it did not possess a general contractor license when it contracted with Beck and performed services under that contract. Instead, Restor-It argues it acted as a "specialty contractor." A "specialty contractor" is defined as

> a contractor whose scope of work and responsibility is of limited scope dealing with only a specific trade and directly related and ancillary work and whose performance is limited to such specialty construction work requiring special skill and requiring specialized building trades or crafts, including, but not limited to, such activities, work, or services requiring licensure under Chapter 14 of this title.

OCGA § 43-41-2 (12). Subsection (f) of OCGA § 43-41-17 exempts a "specialty contractor" from the general contractor licensing regulation:

> Nothing in this chapter shall preclude a specialty contractor from offering or contracting to perform or undertaking or performing for an owner limited, specialty, or specific trade contractor work. However, nothing in this chapter shall permit a specialty contractor to perform work falling within the licensing requirements of Chapter 14 of this title where such specialty contractor is not duly licensed under such chapter to perform such work. The board shall by rule or policy by January 1, 2008, identify specialty contractors or other criteria to determine eligibility under the exemption of this subsection. The specialty contractor otherwise exempted from [general contractor] license requirements under this chapter may perform work for an owner that would otherwise require a [general contractor] license under this chapter where the total scope of the work to be performed is predominantly of the type for which such specialty contractor is duly recognized as

7

exempt under this subsection by the board, provided that such other work involved is incidental to and an integral part of the exempt work performed by the specialty contractor and does not exceed the greater of $10,000.00 or 25 percent of the total value at the time of contracting of the work to be performed.

For purposes of this case, the relevant licensing requirements in Chapter 14 are delineated in OCGA § 43-14-8. OCGA § 43-14-8 (a) (1) provides, "[n]o person shall engage in the electrical contracting business as an electrical contractor unless such person has a valid license. . . ." And, OCGA § 43-14-8 (b) states, in pertinent part, "[n]o person shall engage in the business of plumbing" as a master plumber or a journeyman plumber "unless such person has a valid license. . . ."

This Court already has held that "a party's failure to obtain a license to engage in certain businesses can void the party's business contracts, if the licensing requirement is part of a regulatory scheme in the public interest[.]" *Brantley Land & Timber v. W & D Investments*, 316 Ga. App. 277, 278 (729 SE2d 458) (2012) (addressing utility contractor license under OCGA § 43-14-8.2 (b)).

> Where a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable. Accordingly, at whatever stage of the proceedings it appears that the plaintiff is seeking to recover upon

8

a contract permitted to be entered into only by persons holding licenses issued as a regulatory measure, it becomes imperative for the plaintiff to prove that he holds such a license and held such license at the time the contract was entered into in order to authorize a recovery.

(Citations and punctuation omitted). *Bowers v. Howell*, 203 Ga. App. 636, 636-637 (1) (417 SE2d 392) (1992). We also have said that "the licensing requirements under . . . Title 43 are not merely revenue measures, but rather were intended to regulate the covered industries, including [electrical and plumbing contracting], in the public interest[.]" *Brantley Land & Timber*, 316 Ga. App. at 278-279. Thus, these licensing requirements are to be liberally construed because they are intended for the protection of the public against "faulty, inadequate, inefficient, or unsafe" electrical and plumbing contracting, OCGA § 43-14-1, as well as "faulty, inadequate, inefficient, and unsafe residential and general contractors." OCGA § 43-41-1.

With this framework in mind, we turn to Restor-It's enumerations of error on appeal. In doing so, we note that Restor-It's enumerations are inartfully drafted, and its arguments are both confusing and inextricably intertwined. We, therefore, have taken the liberty of occasionally deciding the arguments and enumerated errors out of the order in which Restor-It has listed them. See *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

9

1. While Restor-It's first argument is confusing, it appears that Restor-It believes the type of work performed under the contract and the value of such work is a jury issue or, at the very least, requires specific findings by the trial court, and the trial court erred in determining that no genuine issue of material fact exists regarding the type of work and value of work performed by Restor-It under the contract with Beck. According to Restor-It, a jury must determine whether the work to be performed under the contract at issue requires a general contractor's license or can be performed by a specialty contractor. This question, however, is of no relevance in this case.

Georgia law requires general contractors to be licensed for the contracts they enter to be valid and enforceable. See OCGA § 43-41-17 (b). Restor-It concedes that it did not hold a general or residential contractor license; instead, Restor-It argues that it is what the law recognizes as a specialty contractor. See OCGA § 43-41-2 (12). According to Restor-It, because of its status as a specialty contractor, its failure to possess a general contractor's license does not make its contract with Beck unenforceable. See OCGA § 43-41-17 (f). Restor-It's argument misses the mark.

Restor-It acknowledges that its contract with Beck "absolutely lists extensive and detailed electrical and plumbing work costing thousands of dollars." In fact, the

estimates forming the contract upon which Restor-It sued Beck outline the installation of two sinks, a toilet, shower, and bathtub, as well as the installation of electrical outlets, a ceiling vent fan, and ceiling can lights. And, Restor-It admits it "was hired to perform and did perform" all services on the project. In addition, despite Restor-It's arguments, which we have addressed in Division 2, Restor-It has presented no evidence that it held a valid license to perform this electrical and plumbing work. Thus, it is of no consequence whether Restor-It is a general contractor or a specialty contractor. The contract with Beck required substantial electrical and plumbing work, and neither a general contractor nor a specialty contractor can perform such work without an electrical or plumbing license. See OCGA § 43-14-8.

Restor-It argues that a jury was required to determine the value of the actual electrical and plumbing work performed because, as a specialty contractor, it is permitted under OCGA § 43-41-17 (f), to perform electrical or plumbing work as long as the work accounts for less than $10,000.00 or 25% of the total job. This is an incorrect statement of the law. It is true that OCGA § 43-41-17 (f) exempts specialty contractors from securing a general contractor's license to perform work under

11

this chapter . . . provided that such other work involved is incidental to and an integral part of the exempt work performed by the specialty contractor and does not exceed the greater of $10,000.00 or 25 percent of the total value at the time of contracting of the work to be performed.

However, the statute also clearly and specifically states, "nothing in **this chapter** shall permit a specialty contractor to perform work falling within the licensing requirements of **Chapter 14** of this title where such specialty contractor is not duly licensed under such chapter to perform such work." (Emphasis supplied.) Id. Accordingly, a plain reading of the statute prohibits a specialty contractor from performing **any** electrical or plumbing work without a license, as mandated by OCGA § 43-14-8 (a) (1) and (b). The fact that the majority of the work performed by Restor-It involved work which required no license is irrelevant; the law does not provide an exemption for de minimis amounts of electrical or plumbing work.

The trial court properly determined that no question of material fact exists for a jury. Indeed, because Restor-It performed electrical and plumbing work without a license, the contract is unenforceable so as to protect the public, regardless of the amount of electrical or plumbing work performed. This was a question of law that did not require a jury to determine an analysis of the work performed or its value.

2. Restor-It next claims that the trial court erred in finding that it performed electrical and plumbing work without a license because, although it "alleged and stated that it performed the contracted services, the record is silent as to whether Restor-It performed those services through a licensed contractor, as such action would be permitted by OCGA § 41-43-17 (f) [sic]."

We first note that Restor-It waived this argument by failing to assert it in the trial court. See *White Oak Homes v. Community Bank & Trust*, 314 Ga. App. 502, 504 (2) (724 SE2d 810) (2012) ("An appellate court will not consider an issue raised for the first time on appeal, because the trial court has not had the opportunity to consider it.") (citation omitted). The record shows that Restor-It never contended in either its brief opposing Beck's motion for summary judgment or at the hearing on the motion that it hired a licensed electrician and plumber to do the contracted work. In fact, as stated in Division 1, Restor-It admits it "was hired to perform and did perform" all services on the project." And, at the motion for new trial hearing, Restor-It's attorney stated,

> We're not supervising anybody. We're doing the work ourself. So the whole idea of being at risk, meaning that you're managing or supervising someone else, that's not the requirement. You can't supervise or manage yourself. If you're doing the work, you're doing the work.

13

Notwithstanding this waiver, Restor-It's argument still fails. Pretermitting whether a specialty contractor can subcontract electrical or plumbing work to a licensed contractor, the "silent record" relied upon by Restor-It is fatal to its claim that the trial court erred. Beck's assertion that the parties' contract is void and unenforceable in its entirety because Restor-It performed electrical and plumbing work without the required licenses is a valid summary judgment argument unless Restor-It came forward with specific evidence giving rise to a triable issue. Restor-It did not.

Although this Court views "the evidence and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant," *Wagner*, 329 Ga. App. at 169 (citation and punctuation omitted), Restor-It, as the nonmovant, bore the burden of coming forward with some evidence demonstrating that it met the licensing requirements of OCGA § 43-14-8 once Beck presented evidence that her contract with Restor-It may be void due to Restor-It's failure to comply with Georgia licensing requirements:

> [A] defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of

14

evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (697 SE2d 779) (2010).

Rather than presenting evidence that licensed contractors performed the electrical and plumbing work specified in the contract, Restor-It asserts on appeal that summary judgment was inappropriate because "[t]he record is completely silent as to whether a licensed plumber performed plumbing work[,]" and it responded to Beck's statement of undisputed material fact "that Restor-It hired and supervised electricians to perform the electrical work." Even if Restor-It were permitted to subcontract the electrical and plumbing work, Restor-It's statements fall far short of the specific evidence needed to defeat Beck's motion for summary judgment. Neither statement produces evidence that licensed individuals performed the contracted electrical and plumbing work. The trial court did not err in finding that Restor-It performed electrical and plumbing work without a license.

3. According to Restor-It, the trial court improperly concluded that "if a specialty contractor performs work that requires licensure for a specific trade, such

as plumbing or electrical work, . . . the result of that unlawful action transforms a specialty contractor into a general contractor." (Emphasis omitted.) It appears the real question is whether a specialty contractor, as defined in OCGA § 43-41-2 (12), can hire licensed electrical and plumbing subcontractors or whether the hiring of subcontractors is strictly reserved for general or residential contractors, as those terms are defined in OCGA § 43-41-2 (5) and (9).

Pretermitting whether Restor-It's representation of the trial court's analysis is fair and whether the analysis is a correct interpretation of the law, we need not reach the issue here because, as we found in Division 2, Restor-It produced no evidence that it subcontracted the electrical and plumbing work to individuals licensed to perform such work. The trial court repeatedly stated that regardless of Restor-It's status, the electrical and plumbing work performed under the agreement with Beck required licensed electrical and plumbing contractors. Accordingly, the trial court's interpretation of the effects of a specialty contractor hiring licensed subcontractors was not crucial to the result reached, and we will affirm a grant of summary judgment if it is right for any reason, whether stated or unstated. See *Albany Oil Mill v. Sumter Electric Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994) ("It is the grant itself that is to be reviewed for error, and not the analysis employed.");

16

see also *Luong v. Tran*, 280 Ga. App. 15, 17 (2) (633 SE2d 797) (2006). We, therefore, find no reversible error.

4. Restor-It asserts that the trial court erred in concluding that it was not a specialty contractor. As we stated in Division 1, Restor-It's status as a general contractor or specialty contractor in this case is irrelevant. Neither contractor can perform electrical or plumbing work without a license. The trial court recognized this fact: "Even if [Restor-It] qualified as a specialty contractor, the Court must summarily dismiss [Restor-It's] complaint" because the agreement between Restor-It and Beck clearly details extensive electrical and plumbing work to be conducted by Restor-It and there is no "de minimis" exception to Georgia's electrical and plumbing contractor licensing requirement. The trial court has correctly stated the law, and we need not address whether the trial court erred in its determination regarding Restor-It's status as a specialty contractor because such a determination was not crucial to the result reached. As stated in Division 3, this Court will affirm a grant of summary judgment if it is right for any reason, whether stated or unstated. See *Albany Oil Mill*, 212 Ga. App. at 243 (3). We find no basis for reversal based on Restor-It's stated argument.

17

5. Restor-It contends the trial court erred in applying the rules promulgated by the State Licensing Board retroactively. Specifically, Restor-It argues once again that it acted as a specialty contractor and that the rules in place when the contract was signed and during the performance of the work at issue permitted a specialty contractor to "coordinate multiple specialty trades within the scopes of work listed [in the rule]." However, even if Restor-It were permitted to coordinate multiple specialties, this does not save its suit against Beck because, as stated in Division 2, Restor-It produced no evidence that the electrical and plumbing work were performed by licensed individuals as required by OCGA § 43-14-8.

6. As an overarching theme, and imbedded in one of Restor-It's enumerations of error, is an argument that the penalty for a specialty contractor engaged in unlicensed electrical or plumbing work should be the issuance of an injunction, the issuance of a cease and desist order, the imposition of a fine, or a ruling that the specialty contractor should be unable to enforce payment for such unlicensed work contained in an otherwise enforceable contract. Stated succinctly, Restor-It asserts the trial court erred in voiding the entire contract. We disagree.

As we already have stated, "a party's failure to obtain a license to engage in certain businesses can void the party's business contracts if the licensing requirement

18

is part of a regulatory scheme in the public interest[,]" and "the licensing requirements under . . . Title 43 are not merely revenue measures, but rather were intended to regulate the covered industries, including [electrical and plumbing contracting], in the public interest[.]" *Brantley Land & Timber*, 316 Ga. App. at 278-279. This Court recently applied those principles in *Baja Properties*, 345 Ga. App. at 102-104 (1). In that case, we relied on *Brantley Land & Timber* and the legislature's stated intent in OCGA § 43-41-1 "to safegurd homeowners . . . against faulty, inadequate, inefficient, and unsafe residential and general contractors" to affirm the trial court's grant of summary judgment to the defendant homeowner on the contractor's claims for breach of contract, quantum meruit, and lien. *Baja Properties*, 345 Ga. App. at 103 (1). This Court specifically found that OCGA § 43-41-17 (b) bars an unlicensed contractor from enforcing a contract for the performance of work for which a license is required and to which no exception applies. *Baja Properties*, 345 Ga. App. at 103-104 (1). Contrary to Restor-It's argument, the analysis and result in the case presently before us is no different.

Both OCGA § 43-14-8 and OCGA § 43-41-17 (f) bar an unlicensed contractor from performing electrical and plumbing work. And, both statutes are intended for the protection of the public against "faulty, inadequate, inefficient, or unsafe"

19

electrical and plumbing contracting, OCGA § 43-14-1, as well as "faulty, inadequate, inefficient, and unsafe residential and general contractors." OCGA § 43-41-1. As we stated before,

> where a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable.

(Citation and punctuation omitted.) *Brantley Land & Timber*, 316 Ga. App. at 278; see also *Bowers*, 203 Ga. App. at 637 (1) (it is "imperative for [a plaintiff seeking to recover on a contract] to prove that he holds such a license and held such license at the time the contract was entered into in order to authorize a recovery"). The contract between Restor-It and Beck is void and unenforceable because Restor-It has not proven that it had a license to perform the electrical and plumbing work detailed in the contract. The trial court did not err by granting summary judgment to Beck on Restor-It's claims.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur*.

20